Kenneth E. Keller (SBN 71450)
Christopher T. Holland (SBN 164053)
Ingrid Leverett (SBN 148813)
KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP
114 Sansome Street, 7th Floor
San Francisco, CA  94104
Telephone:  (415) 249-8330
Facsimile:  (415) 249-8333

Attorneys for Defendant
ADOBE SYSTEMS INCORPORATED

Charles J. Ferrera (SBN 99656)
Attorney at Law
Dillingham Transportation Building
735 Bishop Street, Suite 401
Honolulu, Hawaii 96813
Telephone No.:  (808) 599-5220

Attorney for Plaintiff
BROOKHAVEN TYPESETTING
SERVICES, INC.

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| BROOKHAVEN TYPESETTING SERVICES, INC.,<br><br>          Plaintiff,<br><br>     v.<br><br>ADOBE SYSTEMS INCORPORATED,<br><br>          Defendant. | Case No.: C-01-20813-RMW (E-File)<br><br>**JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER**<br><br>Date:          September 13, 2002<br>Time:          10:30 a.m.<br>Judge:         Hon. Ronald M. Whyte<br>Courtroom:     6 |

Plaintiff Brookhaven Typesetting Services, Inc. ("Brookhaven") and Defendant Adobe Systems Incorporated ("Adobe") hereby jointly submit this Case Management Statement and Proposed Order and request the Court to adopt it as its Case Management Order in this case. (Throughout this Statement, Plaintiff and Defendant are referred to collectively as "the Parties.")

**For the Court's reference, the only sections of this Joint Case Management Conference statement that are substantively different from the Joint Case Management Conference Statement filed on April 19, 2002 are the sections entitled "Anticipated Motions" and "Disclosures and Discovery." Those sections describe the current issues requiring the Court's attention. Minor changes are incorporated in the sections entitled "Jurisdiction" and "Trial Schedule" to reflect the Court's rulings and the progress of the case and to account for the time that remains to prepare for any trial of this action.**

## DESCRIPTION OF THE CASE

### 1.    Jurisdiction.

Plaintiff contends this Court has federal question jurisdiction over this action pursuant to 17 U.S.C. § 501 *et seq.*, 28 U.S.C. §§ 1331, 1338(a), and 1338(b).  As set forth in its Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Adobe believes there is no present claim or controversy ripe for review and thus "jurisdiction" is technically lacking.  The Court denied Adobe's Rule 12(b)(6) motion.  Adobe does not intend to contest the Court's personal jurisdiction over it in this action.

### 2.    Brief Description of the Claims and Defenses in this Action.

**[No change from April 19, 2002.]**  The Parties dispute many of the facts and events underlying this action.  The Parties' separate descriptions of the case are outlined below.

### A.    Brookhaven's Allegations.

**[No change from April 19, 2002.]**  In or about 1970, James R. Roesser ("Roesser") and Roger W. Jones ("Jones") began the development of a software program for the typesetting of mathematical and other technical textbooks, journals and other publications.  This program was later named "K2" (the "Program" or "K2").  From 1972 through 1995, STI, Roesser and Jones

continuously updated and developed the Program, adding tabular, page-layout and chemistry capabilities to the Program.  Brookhaven alleges that the source code comprising the Program is an original work of authorship fixed in a tangible medium of expression, and that the source code contains a substantial amount of material created by Roesser's and Jones' skill, labor and judgment.  The source code comprising the Program contains valuable trade secrets.

Brookhaven alleges that the Program is copyrightable, and that on the date of first publication of the information identified in the Complaint, Roesser and Jones were United States Citizens.  Brookhaven further alleges that Roesser, Jones and Brookhaven have complied with the statutory formalities for registration of copyright with respect to the Program.  Brookhaven filed an application for a copyright with the United States Copyright Office, which application was accepted by the United States Copyright Office.  Brookhaven alleges that it is the legal owner of the copyright.

In 1996, Roesser and Jones transferred all rights in and to the Program to Brookhaven for consideration.  Throughout the Program's existence, Roesser, Jones, STI and Brookhaven have made all reasonable attempts to protect the trade secrets of the Program including entering into non-disclosure agreements, limiting access to the source code of the Program and requiring confidentiality agreements. Brookhaven alleges that the Program developed by Roesser and Jones contains unique capabilities in the areas of technical typesetting, page layout, and style that are not obvious or readily ascertainable.  Brookhaven contends that STI derived, and Brookhaven derives both actual and potential independent economic value from the trade secrets not being generally known to, and not readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

In 1994, Roesser provided the source code to the Program to Aldus Corporation ("Aldus"), Adobe's predecessor pursuant to a non-disclosure agreement, as part of a negotiation to sell or license the Program to Aldus.  Subsequent discussions took place but no sale or license occurred because at about this time, Adobe purchased Aldus.  Aldus never returned the source code.

In or about 1998, Adobe announced that it was developing a program code-named "K2." According to Adobe, the development of the program was begun in 1994 in Seattle by former Aldus employees. The capabilities Adobe described for its "K2" are remarkably similar to the capabilities of the Program shown to Aldus by Roesser in 1994. In March 1999, Adobe previewed its version of "K2", now known as InDesign, at a Seybold conference. In or about August 1999, Adobe released InDesign 1.0. Adobe has since released two additional versions of InDesign.

Brookhaven alleges that Aldus employees acquired and became intimately familiar with the Program's highly confidential information and trade secrets pursuant to a confidential relationship that required Aldus, and its successor Adobe, to maintain the confidentiality of the Program's trade secrets. Brookhaven further alleges, on information and belief, that Aldus, and its successor Adobe were aware that the Program and its source code contained valuable trade secrets.

Brookhaven alleges that Adobe has infringed Brookhaven's copyright and misappropriated Brookhaven's trade secrets by copying the Program and incorporating the Program, or portions thereof, into Adobe's program, InDesign. Brookhaven further alleges that Adobe is currently using Brookhaven's copyrighted material and trade secrets in its InDesign program and to the detriment of Brookhaven. Brookhaven contends that it has pled and intends to prove the elements of copyright infringement and misappropriation of trade secret. Brookhaven alleges that public distribution or disclosure is not required to sustain a cause of action for infringement of copyright or misappropriation of trade secrets, and that mere "use" is enough. Brookhaven further alleges that the lack of a completed marketable product does not defeat Brookhaven's claim for copyright infringement.

Brookhaven contends that it is entitled to damages related to Adobe's profits and/or Brookhaven's loss of income, injunctive relief, and/or such other measure of damages as may be appropriate, including double damages.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.      Adobe's Allegations.**

[No change from April 19, 2002.]  Adobe contends that Brookhaven's suit lacks merit because Brookhaven fails to allege that Adobe is currently selling any product that includes Brookhaven's purported intellectual property.  At most, Brookhaven contends that (1) Adobe purchased a company that once contemplated licensing STI's alleged "Program," and (2) unidentified future versions of Adobe's InDesign program might employ and disclose Brookhaven's alleged trade secrets and/or infringe Brookhaven's alleged copyright.  Adobe has neither used any "improper means" to acquire nor "copied" anything that is allegedly the intellectual property of Brookhaven.  Because Adobe has not misappropriated any alleged trade secret or infringed any purported copyright, Adobe has not engaged in any unlawful or unfair competition.  Furthermore, Adobe is not a party to any contract with Brookhaven.

Adobe further contends that the facts alleged by Brookhaven are insufficient to state any cause of action against Adobe, and that Brookhaven is not entitled to any award of monetary damages, injunctive relief, or attorney's fees.  Substantively, Adobe disputes many of the facts recited above by Brookhaven and expects to obtain evidence during discovery that demonstrates the inaccuracy of several of Brookhaven's assertions.  Among other things, Adobe contends that the alleged source code in the "Program" is neither a protectable trade secret nor copyrightable subject matter, that the alleged source code was not disclosed in confidence to Aldus Corporation, and that Adobe did not assume Aldus Corporation's contractual obligations (if any), with respect to that information.

**3.      Principal Factual and Legal Issues in Dispute.**

[No change from April 19, 2002.]

A.      Whether the information referred to in the Complaint constitutes a protectable trade secret.

B.      Assuming the information referred to in the Complaint constitutes a protectable trade secret, whether Brookhaven and those in privity with Brookhaven have adequately preserved the confidentiality of the alleged trade secret.

C.   Whether Brookhaven has any valid property interest in the alleged trade secret.

D.   Whether Aldus Corporation is the real party in interest with respect to the conduct alleged regarding the alleged trade secret.

E.   Whether Adobe had access to the information identified in the Complaint.

F.   Whether Adobe appropriated any of Brookhaven's alleged trade secrets that are contained in the "Program."

G.   Whether public distribution or disclosure of a trade secret is required to state a cause of action for trade secret misappropriation under California law.

H.   Whether the information identified in the Complaint is sufficiently creative or original so as to qualify for copyright protection, and/or is protectable subject matter under the Federal Copyright Act.

I.   If the source code identified in the Complaint is copyrightable, whether Brookhaven owns a valid and/or enforceable copyright in that source code.

J.   Whether the respective works at issue are substantially similar.

K.   Whether the similarities, if any, between Brookhaven's alleged work and that of Adobe's work relate to a protectable idea.

L.   Whether Adobe's products were created independently from Brookhaven's alleged work.

M.   Whether the lack of a completed marketable product defeats Brookhaven's claim for copyright infringement.

N.   Whether public distribution or disclosure of copyrighted materials is required to state a cause of action for copyright infringement.

O.   Whether Adobe infringed on Brookhaven's alleged copyright in the "Program," in any event.

P.   Whether Adobe has made any unlawful use of any of the information referred to by Brookhaven in its Complaint.

Q.   Whether the Uniform Trade Secrets Act (California Civil Code § 3426 *et seq.*)

and/or the Federal Copyright Act (17 U.S.C. § 101 *et seq.*) preempts Brookhaven's unfair competition cause of action.

R.    Whether Adobe has engaged in any unfair competition.

S.    Whether a contract exists that creates a relationship between Brookhaven and Adobe.

T.    If there is a contractual relationship between Adobe and Brookhaven, whether Adobe breached that contract.

U.    Whether Brookhaven's claims are ripe for adjudication.

V.    Whether Brookhaven's Complaint states a claim upon which relief can be granted.

W.    Whether any statutes of limitation bar Brookhaven's claims.

X.    Whether Brookhaven's claims are barred by one or more of the limitations contained in 17 U.S.C. § 107 *et seq.*

Y.    Whether the doctrines of laches, unclean hands, waiver, and/or estoppel apply to the facts of this case.

Z.    Whether Brookhaven has sustained any damages as a result of Adobe's actions.

AA.    Whether the damages Brookhaven alleges are too remote and/or speculative to be awarded.

BB.    If Brookhaven has sustained damages, whether those damages are mitigated in whole or in part by the doctrine of innocent infringement and/or innocent intent.

CC.    If Brookhaven has sustained damages, whether those damages should be doubled.

DD.    If Brookhaven has suffered any injury, whether it could be adequately compensated in an action at law.

EE.    If Brookhaven has suffered any injury, whether Brookhaven is entitled to injunctive relief pursuant to California Civil Code § 3426.

FF.    Whether Adobe has been unjustly enriched as a result of the conduct alleged in the Complaint.

GG.    Whether Adobe's conduct was in good faith so as to preclude all claims for punitive or exemplary damages.

HH.    Whether Brookhaven is entitled to attorneys' fees.

**4.    Anticipated Motions.**

It is anticipated that Brookhaven and/or Adobe may file motions for summary adjudication and/or summary judgment.

In addition, Brookhaven will request that the Court modify its earlier ruling directing the parties to meet and confer for the purpose of stipulating to a protective order and a protocol for the exchange and comparison of the relevant portions of their respective source codes. Brookhaven intends to ask the court to permit it to propound discovery to Adobe before the parties make any efforts to meet and confer for the purpose of agreeing to a protocol to govern the mutual review of the relevant portions of source code. As explained in detail below, Adobe strongly disagrees with Brookhaven's decision to request modification of the Court's ruling.

**5.    Service of Process.**

**[No change from April 19, 2002.]**  Adobe was served with the Complaint on December 20, 2001.

**6.    Additional Parties.**

**[No change from April 19, 2002.]**

The Parties do not anticipate the inclusion of additional parties in this action, but Adobe maintains that Aldus Corporation was the real party in interest to Brookhaven's allegations.

**7.    Consent to Magistrate.**

**[No change from April 19, 2002.]**

The Parties do not believe this case is suitable for reference to a Magistrate Judge for trial.

**ALTERNATIVE DISPUTE RESOLUTION**

**[No change from April 19, 2002.]**  This action was automatically assigned to non-binding Arbitration. However, the Parties would prefer to be assigned to private mediation. The

Parties anticipate exchanging proposed mediators and selecting a mutually agreeable mediator with appropriate intellectual property experience. The Parties have agreed to schedule such a mediation after Defendant's motion for summary judgment has been decided, and possibly after some limited discovery has occurred.

## DISCLOSURES AND DISCOVERY

### Agreed Factual Background

At the Initial Case Management Conference on April 26, 2002, and by order dated May 17, 2002, the Court ordered a review and comparison of the relevant portions of the parties' respective source code.  Specifically, while discussing its previous ruling on Adobe's Motion to Dismiss, the Court ordered the parties to meet and confer to discuss the terms of the confidentiality order and other rules that would govern their review and comparison of each other's respective source code and directed that any discovery take place, if at all, after the source code review.  The Court explained that if the comparison of the relevant portions of source code by the parties' experts revealed that Adobe's products do not infringe any of Brookhaven's rights under the copyright laws, Brookhaven's allegations in the present action would be proven to lack merit and discovery therefore would be unwarranted.

Between June and August of this year, the parties negotiated the terms of a stipulated protective order and agreed that they would discuss the protocol to govern their source code review once a stipulated protective order had been lodged with the Court.  They further agreed that, after lodging the stipulated protective order, Adobe would send Brookhaven a draft stipulated protocol.  During this time period, Brookhaven propounded various discovery requests to Adobe.  Adobe objected to these requests as being in violation of the Court's April 26 and May 17 rulings.

On August 5, Adobe received Brookhaven's approval to lodge the final draft of the stipulated protective order, and Adobe did so on August 6.  On August 9, Adobe sent Brookhaven a draft protocol.  On August 27, Brookhaven's counsel informed Adobe's counsel that Brookhaven intended to ask the Court to modify its April 26 and May 17 rulings to permit

Brookhaven to take discovery in advance of any exchange of source code.

1.      **Brookhaven's Position**

        **[The following section was prepared by Brookhaven's counsel.]**

        Counsel for Brookhaven requested that counsel for Adobe refrain from the juvenile blame shifting that Adobe has engaged in in its position portion of the joint case management statement.  However, Adobe's counsel refused and so I am compelled to respond to their incorrect recitation of the facts.  From the outset, Adobe has attempted to delay both the exchange and review of the source code and other discovery pursuant to Federal Rules of Civil Procedure 26.

        On March 27, 2002, Brookhaven's counsel forwarded a draft Stipulation and Proposed Protective Order to Adobe's counsel.  Contrary to their assertions, the draft did comport with form of order that has previously been accepted by judges in the Northern District of California.  Despite repeated calls, Adobe's counsel did not return a revised draft Stipulation and Proposed Protective Order until June 7, 2002, more than two months after receiving the initial draft and more than a month after the initial conference before the Court.  Contrary to their assertions, the revised draft did not contain substantial revisions.  In revising the draft, Adobe's counsel had done two things.  First, they deleted the portions governing the exchange and review of source code and indicated that review of source code would be the subject of a separate protocol.  This was remarkable, considering that they had taken two months to revise the proposed Order and had proposed that review of the source code be completed by the end of June, but by June 7, 2002, had not even proposed a protocol for conducting the review.  Second, Adobe's counsel had not included any provision for the jury to be able to review the confidential documents and/or materials that would be offered into evidence.  Brookhaven's counsel pointed this deficiency out to Adobe's counsel and the parties eventually came to an agreement on the Stipulation and Proposed Protective Order, without any portion that would govern the exchange and review of the source code, on or about July 12, 2002.

On August 9, 2002, approximately 35 days before the case management conference, more than six weeks after the date proposed by Adobe's counsel for review of the source code, and more than four months after Brookhaven's counsel had proposed the protocol for review of the source code, Adobe's counsel for the first time proposed a protocol for review and exchange of the source code to Brookhaven.  Incredibly, the proposal allowed for one day to review the "relevant portions" of the released versions of the source code in Adobe's counsel's office.  Not only does InDesign contain approximately 1.5 million lines of code, but also there are at least three developmental versions and three released versions that counsel for Brookhaven has sought to review.  Adobe's counsel must have known when it proposed the protocol that it would be wholly unacceptable to Brookhaven and that it would lead to further delay, a pattern which they have perfected since their motion to dismiss was denied.  It will take weeks for Brookhaven's experts to analyze the source code.

Adobe has made much of Brookhaven's alleged "repeated[] flout[ing]" of this Court's orders by "propounding discovery to Adobe."  Counsel for Brookhaven has served only one request for discovery on counsel for Adobe and it was served before the entry of the Case Management Order.  Moreover, Adobe's counsel is blatantly mischaracterizing what the Court ordered.  Rather than putting all discovery on hold pending the outcome of the review of the source code, the minute order for the April 26, 2002 conference reads:

> Hearing Held.  The parties are to meet and confer regarding reviewing the code and a mechanism of reviewing the code; *complete initial disclosure*.  The Court set a further Case Management Conference for the above date and time.

Minute Order (emphasis added).  Thus, the Court specifically ordered that the initial disclosures required under Rule 26 be completed.  This hardly comports with Adobe's counsel's characterization of the Order.   Plaintiff's counsel sent requests for production and requests for answers to interrogatories to Adobe and told defense counsel that these were the documents that Plaintiff's counsel would be seeking and that there was no need to respond.  Plaintiff's counsel did tell Adobe's counsel that Adobe's counsel should look at these requests in order to help it

comply with Rule 26, which it was required to do by this Court.

After receiving Adobe's tactical, yet unacceptable draft of the protocol for review and exchange of software, realizing that Adobe has managed to put off the start of discovery for more than four months and that the negotiation of the protocol will be contentious and time consuming, Brookhaven's counsel made a reasonable proposal to Adobe's counsel:  go forward with the currently scheduled Case Management Conference, get discovery moving, including the initial disclosure, and earnestly negotiate a reasonable protocol for the exchange of software.  If agreement cannot be reached on the protocol, we will bring the issue before the Magistrate Judge.

Counsel for Brookhaven contends that Brookhaven is entitled to the initial disclosures required under Rule 26.  Adobe's counsel, however, would like to add an additional layer to discovery under the federal rules; that a plaintiff must demonstrate after a one day review of the source code that it will win its case before any discovery is allowed.  Adobe's motion to dismiss was denied and thus this Court has determined that Brookhaven has properly plead causes of action for copyright infringement, misappropriation of trade secrets, unfair trade practices and breach of contract.  Brookhaven contends that it is all that is required before conducting discovery.

Moreover, after conferring with several experts and understanding the complexity of reviewing Adobe's source codes, Brookhaven's counsel believes that the process will be made tremendously more efficient if we are allowed to obtain documents requested in our request for production of documents, to obtain answers to interrogatories and to be allowed to take the depositions of the persons most knowledgeable concerning the architecture of both the marketed and developmental versions of InDesign.

Adobe is "disturbed" by the fact that Brookhaven wants to perform discovery upon all of the previous iterations of Adobe source code, even if they were never commercialized.  From the look of things, it appears that Adobe is disturbed because they know that Plaintiff will find their source code in Adobe's K-2.

Adobe seems to think that Brookhaven's discovery of Adobe's K-2 and other source code is not permissible because it is not "relevant". The standard applied in discovery is that the inquiry must be reasonably calculated to lead to admissible evidence. If Plaintiff finds Brookhaven's K-2 code in Adobe's K-2 code, it will make the search for Brookhaven's code in the InDesign program much easier.

Adobe states that Adobe's experts have explained that "standard comparison software can process a million lines of code in just a few hours." Although this is true, it misses the point. Plaintiff's experts have told Plaintiff's counsel that a comparison and review of Adobe's software will take days or weeks and that it is virtually impossible to perform a meaningful review by simply sitting down and comparing codes with standard programs.

Finally, Brookhaven contends that production of five copies of each developmental and released versions of Adobe's source code is highly reasonable. Brookhaven has retained three experts and each will need a copy of the source code for review. Counsel for Brookhaven, in order to be able to communicate and work with the experts, will need to maintain a copy. The fifth copy is necessary because Brookhaven anticipates that any protocol will prevent Brookhaven from making additional copies of the source code. Thus, Brookhaven will need a final copy for any future expert it retains. Moreover, Adobe's concerns with confidentiality can easily be addressed. Recognizing the very confidential nature of source code, Brookhaven has proposed a set of special protections for source code, above and beyond the existing stringent protections in the Protective Order. These include password protecting all electronic copies of source code; keeping all copies of source code under lock and key except when in use; not allowing any source code to be stored on a computer disk drive that is accessible from a network; not allowing any source code to be stored on a computer file server; identifying each computer on which source code is stored; keeping a log of all counsel or experts who have access to the source code; and requiring the destruction, and certification thereof, of the source code after this dispute ends. While Brookhaven's counsel does not believe there needs to be any numerical limit in light of the stringent protections it has proposed, Brookhaven's counsel

believes that five is reasonable and any fewer will put logistical limitations on Plaintiff.

The real purpose in taking the position it has taken becomes clear at the end of Adobe's position; they want to further delay Brookhaven in its attempt to make its case.  Adobe is more than willing, after taking more than four months to make a counter proposal on the review of the source code, to further extend the period of time for the review.  Brookhaven's counsel understands that it will take some time to negotiate the protocol but believes that discovery should not be further stalled while doing so.

Adobe states that because of Brookhaven's delays Adobe's experts' schedules are filled and the source code review is now impossible.  As stated above, the first proposal for the exchange of the source code was sent on August 9, 2002.  Brookhaven's counsel did respond with a letter which stated that, rather than accepting one day of review at Adobe's attorney's offices of the source code of Adobe's attorney's choice, Plaintiff wanted to obtain five copies of each of the seven source codes that are at issue, which copies could be reviewed by Plaintiff's experts.  Adobe states that Brookhaven's counsel has no intention of abiding by Judge Whyte's ruling and refuses even to discuss any revisions to Adobe's draft protocol.  Adobe's first proposal was so restrictive that complying with it would be tantamount to dismissing Plaintiff's case.  Furthermore, Plaintiff's counsel did respond with the request for five copies of each of the seven source codes at issue.

On Friday, August 30, 2002, Plaintiff's counsel e-mailed the above section to Adobe's counsel.  Adobe's counsel has since insisted on adding more rhetoric to its position.  Plaintiff's counsel will not respond to each of Adobe's new points except to say the following.  Plaintiff's counsel wants to proceed with this case as is appropriate for a normal civil action in the United States District Court.  Plaintiff is entitled to perform discovery and is willing to do so while Plaintiff is reviewing Adobe's source code, provided that Plaintiff has adequate time to review the source code and provided that Adobe produces the relevant discovery responses within 30 days of the case management conference.  Allowing the Plaintiff to perform discovery will facilitate its review and allow it to determine whether or not its trade secrets were stolen and/or

1   whether or not its source code was copied or otherwise infringed upon.  Finally, Adobe's latest

2   position is that it will extend the time period for Plaintiff's expert witnesses to review the Source

3   Code for up to "several days", at Defendant's attorney's offices.  This again shows Adobe's

4   transparent attempt to fatally undermine Plaintiff's case by unfairly limiting the time, location

5   and resources that Plaintiff can bring to bear to analyze Adobe's code.  Defendant should not be

6   allowed to limit Plaintiff's case in these ways.

7   **2.     Adobe's Position**[1]

8          In considering Brookhaven's current request to eliminate the preliminary source code

9   review that was previously ordered by this Court and instead engage in full-scale discovery

10  immediately, it is important to recall the background of this case and how that proposed source

11  code review came into existence in the first place.  Very simply, Brookhaven filed its complaint

12  last fall after the parties were unable to work out a protocol for determining whether any

13  colorable claim of copyright infringement even existed.  Brookhaven then did not serve the

14  Complaint for several weeks.  After the Complaint was served, Brookhaven's original counsel

15  almost immediately informed the Court of its withdrawal from the case, and Brookhaven went

16  unrepresented for nearly two months.  That situation culminated in the Court ordering

17  Brookhaven to engage new counsel by March 1, 2002 or face dismissal of its Complaint.

18         After Brookhaven retained its current counsel, the Court denied Adobe's Motion to

19  Dismiss.  However, immediately after issuing that ruling, at the April 19 Case Management

20  Conference in this action the Court expressed its concerns with respect to Brookhaven's

21  allegations of infringement.  As a result, the Court ordered the parties' counsel and independent

22  experts to review the accused source code, compare it to the allegedly copyrighted code, and

23

24         [1]      Brookhaven's contention that Adobe "added rhetoric to its position" since
    receiving Brookhaven's statement of its position on August 30 is misleading.  Brookhaven e-
25  mailed its statement of position to Adobe on Friday, August 30 at 5:00 p.m. before a three-day
    weekend.  On Tuesday, Adobe e-mailed Brookhaven a draft of the present statement that
26  included Brookhaven's statement of its position and Adobe's responses to Brookhaven's
    contentions.  As Brookhaven concedes, it has been given an opportunity—specifically, more
27  than a day—to respond to Adobe's "added rhetoric," but has evidently chosen not to do so.

28

determine whether this case should proceed at all.

Among other things, the Court has made it clear that discovery in this matter is to go forward, if at all, only if the parties' review of relevant portions of their respective source codes reveals that discovery is warranted by a colorable basis to believe that Brookhaven's allegations have merit. A primary purpose of the source code exchange and review that this Court expressly contemplated is to avoid precisely the wasteful and burdensome discovery that Brookhaven now proposes.[2]

Pursuant to the Court's direction following the Initial Case Management Conference, counsel for Adobe prepared a draft order. Before lodging it with the Court, counsel sent the proposed order to Brookhaven's counsel. Brookhaven's counsel reviewed the proposed order, made no objections and approved it. The Court entered that order on May 17, 2002.[3]

Because the proposed draft protective order Brookhaven had provided to Adobe before the Initial Case Management Conference did not comport with the form of order that Adobe's counsel had previously seen accepted by judges in the Northern District of California, Adobe undertook to revise the draft substantially. From the parties' discussions following the Initial Joint Case Management Conference, it became clear that it would take the parties significantly

---

[2]    Brookhaven's assertion that the inclusion of the words "complete initial disclosure" in its April 26 Minute Order somehow "contradicted" the Court's requirement of the initial source code review is misguided, at best. Not only is the concept of initial disclosures completely absent from the full May 17 Order which the parties stipulated to (and the Court approved), the Court and the parties discussed during the April 26 Case Management Conference that the only thing to be "disclosed" were the source codes at issue.

[3]    Meanwhile, on May 1, 2002, Brookhaven served a First Set of Document Requests on Adobe despite the Court's rulings and despite the parties' agreement that document requests Brookhaven planned to provide to Adobe were merely for Adobe's information should discovery be permitted later. In mid-July, Brookhaven requested that Adobe begin making initial disclosures immediately. After each of these unauthorized efforts to obtain discovery, Adobe communicated with Brookhaven to object strenuously, pointing out that the purpose of this Court's ruling that the parties review relevant portions of their respective source code to was to determine whether discovery is warranted, thereby saving wasted time and resources if it is not. Nevertheless, Brookhaven on August 8 again sent Adobe a letter requesting the results of various computer searches Brookhaven contends Adobe conducted.

longer to negotiate rules to govern the source code review than to negotiate the protective order. Rather than delay the entry of a protective order any longer than necessary, Adobe proposed preparing a separate stipulated order to govern the source code review after the stipulated protective order was lodged with the Court.  After repeatedly proposing this idea to Brookhaven, Adobe received no objection from Brookhaven.

On June 7, Adobe's counsel returned to Brookhaven a revised draft Stipulation and Proposed Protective Order.  During the month that followed, Adobe had to re-send the draft twice after Brookhaven's counsel repeatedly claimed to have either lost, or not received, Adobe's revised draft.  On July 18, Brookhaven's counsel finally informed Adobe that he had only one revision to make to the draft.  Adobe incorporated that same revision in a draft e-mailed to Brookhaven's counsel the following day.

Despite Adobe's July 30 e-mail message reminding Brookhaven's counsel that Adobe was awaiting his approval to file the Stipulation and Proposed Protective Order, Adobe heard nothing from Brookhaven for more than two weeks.  Finally, on August 5, Brookhaven's counsel called Adobe counsel and claimed, inaccurately, that the draft previously sent him did not contain the revision he had requested.  Brookhaven's counsel's error was pointed out and, finally having obtained his approval, Adobe lodged the Stipulation and Proposed Protective Order the following day.

Three days later, on August 9, Adobe sent Brookhaven a draft stipulation and proposed order setting forth the protocol to govern the parties' exchange and review of source code.  For more than two weeks, Adobe heard nothing from Brookhaven's counsel concerning that draft protocol, despite Adobe's several unanswered voice- and e-mail messages to Brookhaven's counsel asking for such a response.  Because of Brookhaven's delays in responding to Adobe, the schedules for Adobe's experts during September have filled, and any source code review is now impossible until after September 13, the date currently set for this Case Management Conference.

Finally, on August 27, Brookhaven's counsel called Adobe's counsel and explained that

Brookhaven has no intention of abiding by Judge Whyte's ruling and refuses even to discuss any revisions to Adobe's draft protocol. In fact, as demonstrated by Brookhaven's August 28, 2002 letter attached hereto as Exhibit A, Brookhaven intends to ask this Court to completely vacate its prior ruling directing that the parties withhold discovery efforts pending a source code review.

Since the Initial Case Management Conference, the parties' efforts to comply with the Court's ruling have been almost entirely one-sided. In addition to simply failing to cooperate with Adobe's attempts to conduct the source code exchange and review ordered by the Court, Brookhaven has repeatedly flouted the Court's ruling by propounding discovery to Adobe.[4] In other words, Brookhaven has chosen to resist the April 26 and May 17 rulings instead of filing a motion asking the Court to reconsider them. Brookhaven provides no valid reason for the Court to modify its previous rulings, and nothing relevant has changed since the Court issued them. Apparently, Brookhaven is simply unhappy with the reality of having to comply with those orders and now wants to embark on a fishing expedition in an effort to support its already tenuous allegations of infringement.

More disturbing is the fact that Brookhaven now proposes to take discovery of all "previous" iterations of Adobe's source code, even if these were never commercialized and are not included in Adobe's InDesign product, on the ostensible ground that taking such discovery will "aid" Brookhaven's experts in their analysis of the InDesign product.

Very simply, the Court has already considered and rejected what Brookhaven proposes, i.e., discovery in advance of an exchange and review of the relevant portions of the parties' respective source code. The reason the Court rejected this proposal the first time was to avoid the unavoidable and massive burden attendant on discovery if, as Adobe believes is likely, a comparison of the source code at issue proves that Brookhaven's allegations are meritless.

---

[4]     With respect to Brookhaven's contention that Adobe somehow "delayed" in its response to Brookhaven's March 27 draft protective order, it should be noted that in addition to Adobe's counsel being involved in two separate trials around that time, until April 19 Adobe had pending a motion to dismiss which, if granted, would have obviated entirely the need for any protective order.

Even if the Court had not already rejected Brookhaven's request to conduct discovery in advance of a source code review, the specific plan Brookhaven proposes should be rejected as unnecessary and irreparably one-sided.  Among other problems, any review of Adobe's non-commercialized source code is a complete waste of time and resources since such non-commercialized code (even if it exists) could never infringe any alleged copyright held by Brookhaven.  Several times, Adobe has asked Brookhaven how Adobe's non-commercialized source code is relevant.  Until providing Adobe with its insert to this Joint Case Management Conference statement, Brookhaven was unable or unwilling to answer this question.

Brookhaven's contention that the standard governing discovery permits its examination of non-commercialized versions of Adobe's source code misses the point.  The source code review is not discovery.  It is, rather, a threshold requirement imposed by this Court to ascertain whether the present action has a colorable basis in fact, specifically to help the parties *avoid* full-scale discovery if none is warranted.

Examination of Adobe's non-commercialized source code is completely irrelevant to that objective.  Rather, Brookhaven's effort to review Adobe's non-commercialized source code is calculated to pointlessly burden Adobe while permitting Brookhaven to fish for anything it might use as illusory support for its weak claims.  Standard comparison software will automatically identify any matches in the relevant portions of the parties' commercialized source code – however small, however generic, and however ultimately immaterial to any claim of copyright infringement or misappropriation of trade secrets.  Given that the source code review will be overinclusive, Brookhaven's insistence that Adobe produce non-commercialized source code should be seen for what it is – a transparent effort to seemingly prop up feeble claims.  The bottom line is that absent any material matches in the parties' respective commercialized code, Brookhaven's claims fail.

Also objectionable is Brookhaven's proposal at paragraph 5 of its new plan  (see Exhibit A) that each party take possession of *five copies* of the other party's source code and maintain it for the duration of the litigation.  First, this provision is astounding in view of Adobe's

1   previously-expressed concerns with confidentiality, as evidenced by the August 16 stipulated

2   Protective Order, and in view of the provisions at paragraph 4 of Brookhaven's own proposal

3   (see Exhibit A).  Second, this provision is completely unnecessary given that the parties will be

4   exchanging source code for their respective *experts' review*, comparison and evaluation.  There

5   is no reason whatsoever for Brookhaven's experts to keep five separate copies of code.

6        As a procedural matter, Brookhaven's expressed "concerns" over the Court's required

7   review can be completely eliminated by simply extending the period of time for the parties'

8   experts to review the code.  As counsel for Brookhaven well knows, Adobe remains willing to

9   modify its proposed stipulated protocol to permit this review to last several days if necessary—

10  despite the fact that Adobe's experts have explained that standard comparison software can

11  process a million lines of code *in just a few hours*.[5]

12       For these reasons, Adobe respectfully requests that this Court confirm its previous ruling

13  as well as the attached Proposed Order Setting Forth Protocol for the Parties' Exchange of

14  Relevant Portions of Their Respective Source Code.  Once that review is complete, a full

15  discovery schedule can be prepared and approved by the Court if necessary.

16                              **TRIAL SCHEDULE**

17       Adobe believes that following the exchange and review of the relevant portions of source

18  code, Brookhaven's allegations will be proven to be meritless.  Consequently, it is Adobe's

19  position that no trial will be necessary.

20       In the event that this matter does proceed to trial, the parties request that trial be set to

21  begin in December 2003.  The parties expect the trial testimony to last approximately 7-10 court

22  days, exclusive of *voir dire*, argument, motions, and other presentations outside the presence of

23  the jury, and depending on the scope of testimony and the number of witnesses permitted by the

24  ---

25  [5]      Brookhaven seeks 120 days, or four months, to complete the source code review
    ordered by the Court.  *See* Brookhaven's Proposed Order Setting Forth Protocol for Production
    and Examination of the Parties' Respective Source Codes.  Any such "review" would be
26  indistinguishable from ordinary civil discovery.  Again, the point of the source code review is to
    ascertain whether discovery is warranted.  Brookhaven's proposal is an end-run around the
27  Court's May 17 order.

28

1    Court.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

Respectfully submitted,

2

Dated:  September 6, 2002                    CHARLES J. FERRERA

3

4

By: _____/s/_____

5

Charles J. Ferrera
Attorney for Plaintiff

6

BROOKHAVEN TYPESETTING SERVICES, INC.

7

8

Dated:  September 6, 2002          KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP

9

10

By: _____/s/_____

Kenneth E. Keller
Attorneys for Defendant

11

ADOBE SYSTEMS INCORPORATED

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

20045-001

## <u>CASE MANAGEMENT ORDER</u>

The attached Order Setting Forth Protocol for the Parties' Exchange of Relevant Portions of Their Respective Source Code ("the Order") is hereby approved.  The Court further orders that Brookhaven cease propounding discovery requests to Adobe and that neither party propound any further discovery requests until the parties have complied with the provisions of the Order.

Dated: _____, 2002

_____
THE HONORABLE RONALD M. WHYTE
UNITED STATES DISTRICT COURT JUDGE