1  Kenneth E. Keller (SBN 71450)
   Christopher T. Holland (SBN 164053)
2  Karen M. Burton (SBN 184239)
   KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP
3  114 Sansome Street, 7th Floor
   San Francisco, CA  94104
4  Telephone:  (415) 249-8330
   Facsimile:  (415) 249-8333
5
   CHARLES J. FERRERA        #99656
6  Attorney at Law
   Dillingham Transportation Building
7  735 Bishop Street, Suite 401
   Honolulu, Hawaii 96813
8  Telephone No.:  (808) 599-5220
9  Attorney for Plaintiff
   BROOKHAVEN TYPESETTING
10 SERVICES, INC.

11             IN THE UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13                     SAN JOSE DIVISION

14 BROOKHAVEN TYPESETTING          )
   SERVICES, INC.,                 )   Case No.: C-01-20813-RMW (E-File)
15                                 )
                  Plaintiff,       )   **JOINT CASE MANAGEMENT**
16                                 )   **STATEMENT AND [PROPOSED]**
           v.                      )   **ORDER**
17                                 )
   ADOBE SYSTEMS INCORPORATED,     )   Date:      February 14, 2003
18                                 )   Time:      10:30 a.m.
                  Defendant.       )   Judge:     Hon. Ronald M. Whyte
19                                 )   Courtroom: 6

20         Plaintiff Brookhaven Typesetting Services, Inc. ("Brookhaven") and Defendant

21 Adobe Systems Incorporated ("Adobe") hereby jointly submit this Case Management Statement

22 and Proposed Order and request the Court to adopt it as its Case Management Order in this case.

23 (Throughout this Statement, Plaintiff and Defendant are referred to collectively as "the Parties.")

24         **For the Court's reference, the only sections of this Joint Case Management**

25 **Statement that are substantively different from the Joint Case Management Conference**

26 **Statements filed on April 19, 2002, September 6, 2002 and Attempted Joint Case**

27

28                                    1

**Management Conference Statement filed on November 6, 2002, are the sections entitled "Anticipated Motions" and "Disclosures and Discovery."  Those sections describe the current issues requiring the Court's attention.**

**DESCRIPTION OF THE CASE**

      1.    **<u>Jurisdiction.</u>**

         **[No change from September 6 or November 6, 2002]** Plaintiff contends this Court has federal question jurisdiction over this action pursuant to 17 U.S.C. § 501 et seq., 28 U.S.C. §§ 1331, 1338(a), and 1338(b).  As set forth in its Motion to Dismiss, Adobe contends there is no present claim or controversy ripe for review and thus "jurisdiction" is technically lacking.  The Court denied Adobe's Rule 12(b)(6) motion.  Adobe does not intend to contest the Court's personal jurisdiction over it in this action.

      2.    **<u>Brief Description of the Claims and Defenses in this Action.</u>**

         **[No change from April 19, September 6 or November 6, 2002.]**  The Parties dispute many of the facts and events underlying this action.  The Parties' separate descriptions of the case are outlined below.

      A.    **<u>Brookhaven's Allegations.</u>**

         **[No change from April 19, September 6 or November 6, 2002.]**  In or about 1970, James R. Roesser ("Roesser") and Roger W. Jones ("Jones") began the development of a software program for the typesetting of mathematical and other technical textbooks, journals and other publications.  This program was later named "K2" (the "Program" or "K2").  From 1972 through 1995, STI, Roesser and Jones continuously updated and developed the Program, adding tabular, page-layout and chemistry capabilities to the Program.  Brookhaven alleges that the source code comprising the Program is an original work of authorship fixed in a tangible medium of expression, and that the source code contains a substantial amount of material created by Roesser's and Jones' skill, labor and judgment.  The source code comprising the Program contains valuable trade secrets.

2

1       Brookhaven alleges that the Program is copyrightable, and that on the date of first

2  publication of the information identified in the Complaint, Roesser and Jones were United States

3  Citizens.  Brookhaven further alleges that Roesser, Jones and Brookhaven have complied with

4  the statutory formalities for registration of copyright with respect to the Program.  Brookhaven

5  filed an application for a copyright with the United States Copyright Office, which application

6  was accepted by the United States Copyright Office.  Brookhaven alleges that it is the legal

7  owner of the copyright.

8       In 1996, Roesser and Jones transferred all rights in and to the Program to

9  Brookhaven for consideration.  Throughout the Program's existence, Roesser, Jones, STI and

10  Brookhaven have made all reasonable attempts to protect the trade secrets of the Program

11  including entering into non-disclosure agreements, limiting access to the source code of the

12  Program and requiring confidentiality agreements.  Brookhaven alleges that the Program

13  developed by Roesser and Jones contains unique capabilities in the areas of technical

14  typesetting, page layout, and style that are not obvious or readily ascertainable.  Brookhaven

15  contends that STI derived, and Brookhaven derives both actual and potential independent

16  economic value from the trade secrets not being generally known to, and not readily

17  ascertainable by proper means by other persons who can obtain economic value from its

18  disclosure or use.

19       In 1994, Roesser provided the source code to the Program to Aldus Corporation

20  ("Aldus"), Adobe's predecessor pursuant to a non-disclosure agreement, as part of a negotiation

21  to sell or license the Program to Aldus.  Subsequent discussions took place but no sale or license

22  occurred because at about this time, Adobe purchased Aldus.  Aldus never returned the source

23  code.

24       In or about 1998, Adobe announced that it was developing a program code-named

25  "K2."  According to Adobe, the development of the program was begun in 1994 in Seattle by

26  former Aldus employees.  The capabilities Adobe described for its "K2" are remarkably similar

27

28                    3

to the capabilities of the Program shown to Aldus by Roesser in 1994.  In March 1999, Adobe previewed its version of "K2", now known as InDesign, at a Seybold conference.  In or about August 1999, Adobe released InDesign 1.0.  Adobe has since released two additional versions of InDesign.

Brookhaven alleges that Aldus employees acquired and became intimately familiar with the Program's highly confidential information and trade secrets pursuant to a confidential relationship that required Aldus, and its successor Adobe, to maintain the confidentiality of the Program's trade secrets.  Brookhaven further alleges, on information and belief, that Aldus, and its successor Adobe were aware that the Program and its source code contained valuable trade secrets.

Brookhaven alleges that Adobe has infringed Brookhaven's copyright and misappropriated Brookhaven's trade secrets by copying and incorporating the Program, or portions thereof, into Adobe's program, InDesign.  Brookhaven further alleges that Adobe is currently using Brookhaven's copyrighted material and trade secrets in its InDesign program and to the detriment of Brookhaven.  Brookhaven contends that is has pled and intends to prove the elements of copyright infringement and misappropriation of trade secret.  Brookhaven alleges that public distribution or disclosure is not required to sustain a cause of action for infringement of copyright or misappropriation of trade secrets, and that mere "use" is enough.  Brookhaven further alleges that the lack of a completed marketable product does not defeat Brookhaven's claim for copyright infringement.

Brookhaven contends that it is entitled to damages related to Adobe's profits and/or Brookhaven's loss of income, injunctive relief, and/or such other measure of damages as may be appropriate, including double damages.

**B.    Adobe's Allegations.**

**[No change from April 19, September 6 or November 6, 2002.]**  Adobe contends that Brookhaven's suit lacks merit because Brookhaven fails to allege that Adobe is

currently selling any product that includes Brookhaven's purported intellectual property.  At most, Brookhaven contends that (1) Adobe purchased a company that once contemplated licensing STI's alleged "Program," and (2) unidentified future versions of Adobe's InDesign program might employ and disclose Brookhaven's alleged trade secrets and/or infringe Brookhaven's alleged copyright.  Adobe has neither used any "improper means" to acquire nor "copied" anything that is allegedly the intellectual property of Brookhaven.  Because Adobe has not misappropriated any alleged trade secret or infringed any purported copyright, Adobe has not engaged in any unlawful or unfair competition.  Furthermore, Adobe is not a party to any contract with Brookhaven.

Adobe further contends that the facts alleged by Brookhaven are insufficient to state any cause of action against Adobe, and that Brookhaven is not entitled to any award of monetary damages, injunctive relief, or attorney's fees.  Substantively, Adobe disputes many of the facts recited above by Brookhaven, and expects to obtain evidence during discovery that demonstrates the inaccuracy of several of Brookhaven's assertions.  Among other things, Adobe contends that the alleged source code in the "Program" is neither a protectable trade secret nor copyrightable subject matter, that the alleged source code was not disclosed in confidence to Aldus Corporation, and that Adobe did not assume Aldus Corporation's contractual obligations (if any), with respect to that information.

**3.**      **Principal Factual and Legal Issues in Dispute.**

**[No change from April 19, September 6 or November 6, 2002.]**

A.      Whether the information referred to in the Complaint constitutes a protectable trade secret.

B.      Assuming the information referred to in the Complaint constitutes a protectable trade secret, whether Brookhaven and those in privity with Brookhaven have adequately preserved the confidentiality of the alleged trade secret.

C.      Whether Brookhaven has any valid property interest in the alleged trade secret.

D.    Whether Aldus Corporation is the real party in interest with respect to the conduct alleged regarding the alleged trade secret.

E.    Whether Adobe had access to the information identified in the Complaint.

F.    Whether Adobe appropriated any of Brookhaven's alleged trade secrets that are contained in the "Program."

G.    Whether public distribution or disclosure of a trade secret is required to state a cause of action for trade secret misappropriation under California law.

H.    Whether the information identified in the Complaint is sufficiently creative or original so as to qualify for copyright protection, and/or is protectable subject matter under the Federal Copyright Act.

I.    If the source code identified in the Complaint is copyrightable, whether Brookhaven owns a valid and/or enforceable copyright in that source code.

J.    Whether the respective works at issue are substantially similar.

K.    Whether the similarities, if any, between Brookhaven's alleged work and that of Adobe's work relate to a protectable idea.

L.    Whether Adobe's products were created independently from Brookhaven's alleged work.

M.    Whether the lack of a completed marketable product defeats Brookhaven's claim for copyright infringement.

N.    Whether public distribution or disclosure of copyrighted materials is required to state a cause of action for copyright infringement.

O.    Whether Adobe infringed on Brookhaven's alleged copyright in the "Program," in any event.

P.    Whether Adobe has made any unlawful use of any of the information referred to by Brookhaven in its Complaint.

Q.    Whether the Uniform Trade Secrets Act (California Civil Code § 3426 et seq.)

and/or the Federal Copyright Act (17 U.S.C. § 101 et seq.) preempts

Brookhaven's unfair competition cause of action.

R. Whether Adobe has engaged in any unfair competition.

S. Whether a contract exists that creates a relationship between Brookhaven and Adobe.

T. If there is a contractual relationship between Adobe and Brookhaven, whether Adobe breached that contract.

U. Whether Brookhaven's claims are ripe for adjudication.

V. Whether Brookhaven's Complaint states a claim upon which relief can be granted.

W. Whether any statutes of limitation bar Brookhaven's claims.

X. Whether Brookhaven's claims are barred by one or more of the limitations contained in 17 U.S.C. § 107 et seq.

Y. Whether the doctrines of laches, unclean hands, waiver, and/or estoppel apply to the facts of this case.

Z. Whether Brookhaven has sustained any damages as a result of Adobe's actions.

AA. Whether the damages Brookhaven alleges are too remote and/or speculative to be awarded.

BB. If Brookhaven has sustained damages, whether those damages are mitigated in whole or in part by the doctrine of innocent infringement and/or innocent intent.

CC. If Brookhaven has sustained damages, whether those damages should be doubled.

DD. If Brookhaven suffered any injury, whether it could be adequately compensated in

an action at law.

EE. If Brookhaven has suffered any injury, whether Brookhaven is entitled to injunctive relief pursuant to California Civil Code § 3426.

FF. Whether Adobe has been unjustly enriched as a result of the conduct alleged in

1    the complaint.

2    GG.    Whether Adobe's conduct was in good faith so as to preclude all claims for

3           punitive or exemplary damages.

4    HH.    Whether Brookhaven is entitled to attorneys' fees.

5    **4.    Anticipated Motions.**

6           It is anticipated that Brookhaven and/or Adobe may file motions for summary

7    adjudication and/or summary judgment.

8           It is Brookhaven's position that Adobe has failed to comply with the Court's Order

9    dated November 20, 2002.  Although the Parties have met and conferred regarding Adobe's

10   non-compliance in an attempt to resolve the issue informally without Court intervention, Adobe

11   persists in its non-compliance and Brookhaven anticipates that it may have to file a motion to

12   compel.

13           In contrast, Adobe believes it is in full compliance with the Court's November 20,

14   2002 Order ("the Order").  Brookhaven contends, erroneously, that Adobe has failed to conduct a

15   "diligent search" for certain information as required by the Order.  As is explained in more detail

16   below, that contention is without foundation.  Adobe has already filed and served one declaration,

17   and, in order to remove any doubt as to the issue, will be filing another shortly, still further setting

18   forth the results of what has been an exhaustive search for the information specified in the Order.

19   Very simply, the reason Brookhaven is unhappy is that Adobe's search failed to produce information

20   Brookhaven had hoped it would turn up—not because of any lack of diligence on Adobe's part.

21   **5.    Service of Process.**

22           **[No change from April 19, September 6 or November 6, 2002.]**  Adobe was

23   served with the Complaint on December 20, 2001.

24   **6.    Additional Parties.**

25           **[No change from April 19, September 6 or November 6, 2002.]**  The Parties do

26   not anticipate the inclusion of additional parties in this action, but Adobe maintains that Aldus

27

28                                          8

Corporation was the real party in interest to Brookhaven's allegations.

**7.**   **Consent to Magistrate.**

**[No change from April 19, September 6 or November 6, 2002.]**  The Parties do not believe this case is suitable for reference to a Magistrate Judge for trial.

## ALTERNATIVE DISPUTE RESOLUTION

**[No change from November 6, 2002.]**  This action was automatically assigned to non-binding Arbitration.  However, the Parties have stipulated to private mediation, and the Court so ordered on October 17, 2002.  The Parties anticipate exchanging proposed mediators and selecting a mutually agreeable mediator with appropriate intellectual property experience.

## DISCLOSURES AND DISCOVERY

**A.**   **Brookhaven's Position Regarding Exchange of Source Code**

The Parties produced and exchanged the Source Code,  in compliance with the Court's Order Setting Forth Protocol for Production and Examination of the Parties' Respective Source Codes dated November 20, 2002 (the "November 20, 2002 Order"), on January 27, 2003. Consistent with the November 20, 2002 Order, the party's experts reports reporting the results of the initial review of the Source Code are due sixty days after the exchange of complete and compilable Source Code, or March 28, 2003.

On several occasions, Brookhaven has requested that Adobe's counsel confirm that the source code underlying Adobe's InDesign program is the same as the source code underlying Adobe's InCopy program.  Prior to the commencement of this lawsuit, Adobe's former counsel, Ian Feinberg of Gray Cary had stated that the source code underlying the two programs is the same.  Brookhaven contends that Adobe's current counsel has ignored Brookhaven's requests to confirm this fact.  Should Adobe continue to do so, Brookhaven will be forced to seek the Court's intervention to either confirm that the source code is the same or produce the source code underlying InCopy.

**B.**   **Adobe's Response Regarding Exchange of Source Code**

1   Adobe and its counsel deny that either of them has ever "ignored" any request

2   proffered by Brookhaven or its counsel. On the contrary, it is Brookhaven's counsel who has

3   repeatedly refused to respond to even the simplest requests from Adobe to move the source code

4   review along, including waiting for weeks to provide confirmation of all of Brookhaven's many

5   experts' work histories as required by the Protective Order and this Court's previous orders

6   dealing with that exchange of sensitive source code information.

7   Most importantly, nowhere in the Order is there any reference to a duty by Adobe

8   to confirm miscellaneous requests by Brookhaven's counsel concerning developmental source code,

9   particularly ones that Brookhaven has previously sought and this Court refused to grant it. Rather,

10  the Order instructed Adobe to investigate simply: (1) whether any such developmental source code

11  exists; and (2) if so, how onerous it would be to produce such developmental source code.

12  Clearly, Brookhaven and its counsel continue to want to open up full discovery in

13  this case, even though the Court has expressly ordered that the necessary first step is for Brookhaven

14  – the party bearing the burden of proof in this matter – to demonstrate that it has any colorable claim

15  of "copying" by Adobe, as opposed to the bald speculation on which Brookhaven has based this

16  action to date.

17  Adobe disagrees with Brookhaven's position as set-forth in section C below , and

18  its subsections 1, 2 and 3.

19  **C.    Brookhaven's Argument: Adobe Has Failed To Comply With Certain Portions of**
**The Court's November 20, 2002 Order**

20

21  In correspondence dated December 19, 2000 to Dirk M. Schenkkan (the

22  "Feinberg Letter"), Ian Feinberg of Gray Cary, Adobe's former counsel, disclosed that Adobe

23  had run a search on its released and developmental versions of the alleged infringing program,

24  InDesign, for various terms (the "Search") and disclosed the results.  For more than five months,

25  the parties have negotiated the production of the Search results and other documents and

26  materials related to the Search.

27

28  10

On two occasions, this Court has ordered Adobe to produce the results of the Search. Most recently, in the Court's Order Setting Forth Protocol for Production and Examination of the Parties' Respective Source Codes dated November 20, 2002, the Court required Adobe to "conduct a diligent search for any printout or other result of" of the Search and to produce any "evidence of the search that still exists." The Court also required Adobe to produce "the developmental code itself and any materials and/or documents related thereto as outlined" in the Feinberg Letter or provide "a declaration explaining why it would be oppressive for Adobe to produce such material."

After months of delay and pursuant to the Court's November 20, 2002 Order, Adobe submitted the Declaration of Frits Habermann ("Habermann Decl."), in which Mr. Habermann not only questions whether Adobe ever conducted the Search but also describes a search that is not diligent but rather is wholly inadequate. Moreover, Adobe neither produced the developmental code nor explained why it would be oppressive to do so. The efforts outlined in the Habermann Declaration do not constitute compliance with the Court's November 20, 2002 Order:

*First*, Brookhaven respectfully submits that Adobe should be estopped from questioning whether the Search was done, as it was Adobe's own counsel who represented, in writing, that Adobe had done the Search;

*Second*, Brookhaven respectfully submits that the search Mr. Habermann describes in his declaration is wholly inadequate and fails to comply with the Court's November 20, 2002 Order. Adobe tasked an employee to conduct the search who was not even employed by Adobe when Adobe conducted the Search. Mr. Habermann, in turn, conducted a severely limited search, asking only those individuals in his "division" who Mr. Habermann believed would "most logically" have done the Search;

*Third*, Adobe has failed to comply with the Court's requirement that Adobe "produce the developmental source code itself" or "provide to Brookhaven's counsel and the Court a declaration explaining why it would be oppressive for Adobe to produce such material." Adobe did not produce any developmental source code to Brookhaven on December 19, 2002. Nor did Adobe provide to Brookhaven or to the Court a declaration explaining why it would be oppressive to do so.

11

By correspondence dated December 23, 2002, Brookhaven expressed its belief that Adobe had failed to comply with the Court's November 20, 2002 Order.  On January 9, 2003, the Parties met and conferred by telephone in an attempt to resolve this issue informally without the intervention of the Court.  Should Adobe continue to fail to comply with the Court's Order, Brookhaven will be required to seek the intervention of the Court.

By correspondence dated January 31, 2003, Adobe states that it has fully complied with the Court's November 20, 2002 Order because it has finally located the person who conducted the Search and will submit a declaration by February 14, 2003.  We anxiously await Adobe's supplemental declaration future compliance does not constitute compliance by December 19, 2002.

**1.     Adobe Should Be Estopped From Questioning Whether Adobe Ever Actually Conducted The Search**

In his declaration, Mr. Habermann writes:  "[I] have been unable to confirm that such a search was done . . . ."  Habermann Decl. 5.  Such a position is absurd; one would think that Adobe needs no reminder that it was Adobe's own counsel, Mr. Ian Feinberg, who disclosed in his correspondence of December 19, 2000 that Adobe had conducted the Search.  Moreover, subsequent to the filing of the Habermann Declaration, counsel for Adobe contacted Mr. Feinberg and confirmed that Adobe had performed the Search.  Thus, Adobe should be estopped from questioning whether Adobe ever conducted the Search.

If Adobe persists in questioning whether it ever conducted such a Search, we will need to seek the intervention of the Court to compel a formal admission that Adobe conducted the Search as outlined in the Feinberg Letter, or in the alternative, discovery of Mr. Feinberg regarding the Feinberg Letter.

**2.     Adobe Failed To Conduct A Diligent Search And Thus Failed To Comply With the Court's November 20, 2002 Order**

Adobe failed to comply with the Court's November 20, 2002 Order with respect to the Search.  Adobe did file the Declaration of Frits Habermann on December 19, 2002 (the

"Habermann Declaration").  However, the efforts to locate the results of, and documents and other materials relating to, the Search outlined in the Habermann Declaration are wholly inadequate.

After months of maneuvering by Adobe, Brookhaven had hoped the issue of Adobe's production of the results of the Search would be laid to rest on December 19, 2002 by the Court's November 20, 2002 Order which specifically required Adobe to conduct a diligent search and produce evidence of the Search.  The efforts Mr. Habermann made to locate the materials the Court ordered Adobe to produce, however, were completely inadequate.

*First*, Adobe "tasked" an employee with "determining whether Adobe has any record of" the Search Adobe conducted (Habermann Decl. ¶ 4) who was not even employed by Adobe when Adobe conducted the Search.  *Id.*  ¶ .

*Second,* the steps Mr. Habermann took to locate the Search were inadequate. Really, the only thing Mr. Habermann did was speak with those in his "division who worked at Adobe in November-December 2000 and who most logically would have done" the Search. Habermann Decl. ¶ 5 (emphasis added).  We do not know how many people this is; we do not know what Mr. Habermann's division is; and we do not know whether employees in other "divisions" could have conducted the Search.  What we do know is that Mr. Habermann spoke only with those employees Mr. Habermann believes "most logically would have done" the Search at a time when Mr. Habermann was not employed by Adobe, not all employees who could have done the Search.  Moreover, Mr. Habermann was "tasked" to look for the results of the Search as well as related documents and/or materials yet he did not speak with the person who disclosed that Adobe had conducted the Search, Ian Feinberg.  Nor did Mr. Habermann speak with Adobe's in-house counsel, who must have been involved in both the Search and the coordination of a response to Brookhaven's correspondence.  The steps Mr. Habermann took are unarguably lacking and leave unanswered questions.

By correspondence dated December 23, 2002, Brookhaven expressed its belief that the search conducted by Mr. Habermann was inadequate and requested that Adobe take the additional steps to conduct a complete search in order to resolve this issue informally without the intervention of the Court:

(1)    Contact the person who reported that Adobe had conducted the Search, Adobe's former counsel, Ian Feinberg of Gray Cary, to ask Mr. Feinberg with whom he communicated about the Search and who he believes conducted the Search;

(2)    Determine which in-house attorney(s) communicated with Mr. Feinberg about the Search;

(3)    Ask those in-house attorney(s) who they believe conducted the Search; and

(4)    Contact any and all employees who were employed during the relevant time period and who could have done the Search, not just those who Mr. Habermann believes "most logically would have done" the Search, to ask the employees whether they conducted the Search or know who may have done so.

The Parties met and conferred by telephone on January 9, 2003 in an attempt to informally resolve the issue without the intervention of the Court.  During this meet and confer, counsel for Adobe:

(1)    Stated that they had spoken with Adobe's prior counsel, Mr. Ian Feinberg, who indicated that he received the information regarding the Search from in-house attorneys, and identified with the in-house attorneys with whom he communicated;

(2)    Stated that they were in the process of locating the in-house attorneys from whom Mr. Feinberg received the information regarding the Search, who are no longer employed by Adobe;

(3)    Stated that there was also a person in Europe who may know about the Search and that counsel for Adobe would contact that person; and

(4)    Confirmed that they were still attempting to locate the developmental versions of the source code.

By letter dated January 14, 2003, counsel for Brookhaven summarized the meet and confer, confirmed that Adobe was still searching for documents and materials relating to the Search, as well as the developmental versions, and requested that Adobe contact all employees to

14

determine whether they conducted such a search or know who may have done so.  Sending an e-mail to a distribution list of Adobe employees should not be too burdensome.

By letter dated January 31, 2003, Adobe wrote with unwarranted indignation that Brookhaven's demands expressed in correspondence and during the meet and confer are now moot because Adobe has located the person who conducted the Search, will submit a supplemental declaration by February 14, 2003 and thus will be in compliance with the Court's November 20, 2002 Order.  Clearly this statement is both incorrect and premature:

*First*, Adobe cannot be said to have complied with the Court's November 20, 2002 Order when they do so more than two months late.

*Second*, Adobe's admission that is has now found the person who conducted the Search constitutes an admission that the efforts outlined in the Habermann Declaration were in fact not diligent and were wholly inadequate.

*Third,* simply identifying the person who conducted the Search does not in itself constitute compliance with the Court's November 20, 2002 Order.  We await the declaration of this as yet unnamed person to see what attempts Adobe has made, now that they know his identity, to locate results and/or other documents and materials relating to the Search.  Certainly, even the most basic search would require Adobe to look through archived e-mails and archived hard drive and/or share drives from the relevant period for any communications and/or documents this person had relating to the search.

There can be no doubt that Adobe failed to comply with this Court's November 20, 2002 Order by December 19, 2002.  We hope that after our numerous attempts to get Adobe to comply, Adobe will have done so by February 14, 2003.  Better late than never.

**3.      Adobe Did Not Produce Developmental Versions of the Source Code and Did Not Submit A Declaration Explaining Why It Would Be Oppressive To Do So And Thus Failed To Comply With The Court's November 20, 2002 Order**

15

Adobe failed to comply with the Court's November 20, 2002 Order by failing to produce the developmental versions of the source code or explain, by declaration, why it would be oppressive for Adobe to do so.

In its November 20, 2002 Order, the Court required Adobe to "produce the developmental source code itself" or  "provide to Brookhaven's counsel and the Court a declaration explaining why it would be oppressive for Adobe to produce such material." Further, the Court ordered that the "production or response shall be provided by December 19, 2002 absent further order of the Court."  Adobe did not produce any developmental source code to Brookhaven on December 19, 2002; Adobe did not provide to Brookhaven or to the Court a declaration explaining why it would be oppressive to produce the developmental source code; and Adobe did not seek from the Court additional time to locate the developmental versions. Thus, Adobe failed to comply with the Court's November 20, 2002 Order.

During the January 9, 2003 telephonic meet and confer, counsel for Adobe stated that Adobe was still searching for the developmental versions.  Twice, to varying degrees, this Court has ordered Adobe to produce developmental versions of the source code and twice, Adobe has failed to do so. Based on Adobe's January 31, 2003 correspondence, Adobe is taking the position that without any evidence of the Search, Adobe cannot determine which developmental versions it searched and thus was not required to produce any such versions.  This position fails for two reasons.  First, the Feinberg Letter states that Adobe searched, without any limitation placed on the term, development versions.  Certainly, even if Adobe had been unable to locate anyone who recalls conducting the Search or any documents or other materials relating to the Search, Adobe should have been able to determine what developmental versions of its source code were available to be searched in November and December 2000.  Second, Adobe is now stating that they have known since at least January 9, 2003 the identity of the person who conduced the Search.  It is unclear why Adobe has been unable, in almost three months, to ask that person which developmental versions he searched.  Brookhaven is understanding of delays

due to the holidays and vacations.  However, the Court specifically provided in its November 20, 2002 Order that Adobe could ask for more time to comply.  Adobe did not do so, simply submitting the Habermann Declaration on December 19, 2002.

Brookhaven urges the Court to compel Adobe to produce the developmental versions of its source code still in its possession and also to provide a list of those versions of the developmental source code that were in Adobe's possession in November/December 2000.

**D.**   **Adobe's Response to Brookhaven's Argument That Adobe Has Failed to Comply**

Six-and-a-half pages of Brookhaven's position articulated above as to Adobe's Compliance with the Order are completely moot, as Adobe has fully complied with the Order's requirement that Adobe produce "any printout or other result of a previous source code search performed by Adobe on developmental versions of InDesign, as described in a December 19, 2000 letter from Adobe attorney Ian Feinberg of Gray Cary to Dirk M. Schenkkan" ("the STI Search").

As Adobe has informed Brookhaven, Adobe has identified the former Adobe employee  who conducted the STI Search.  Although he was out of the country for quite some time (in the Galapagos Islands), Adobe nonetheless made extraordinary efforts to locate and contact him, and Adobe is presently procuring his declaration.  As a result, Adobe believes that declaration will be on file by the time of the presently-scheduled Case Management Conference. Among other things, it appears that the former employee recalls that he performed the search at the request of his manager, that he found occurrences of the letter-combination "sti" but not as a discrete, standalone set of characters, and that he never made any printout of the search. Consequently, there is no basis for any contention that anything remains to be done to unearth any (non-existent) result of the STI Search.  Indeed, the two letters and five-and-a-half pages of the present statement which Brookhaven devotes to this non-issue, including continued threats to file a motion, have been utterly unnecessary given Adobe's earlier representations during meet-and-confer discussions that this information was forthcoming.

Brookhaven  also  misstates  Adobe's  obligations  in  connection  with  Adobe

developmental source code.   Quite clearly, the provision in the Order addressing general developmental source code, globally, is independent of the more specific provision addressing code underlying the STI Search. (Compare Order at ¶ 3 with Order at ¶ 4.) The provision concerning code underlying the STI Search (or a declaration explaining why its production would be oppressive) is premised on Adobe's finding a printout or anything else evidencing the STI Search.  However, the provision addressing code underlying the STI Search does *not* require that Adobe randomly produce developmental source code based on groundless speculation as to what might underlie that search. Rather, as required by ¶ 4 of the Order, Adobe will report at the February 14 CMC the status of its efforts to locate *all* developmental code.  In any event, Brookhaven's argument that Adobe has not provided Brookhaven the underlying developmental source code will be moot by the time this Court holds the February 14, 2003 case management conference, since by that time Brookhaven's counsel will, in fact, have attorneys' eyes only copies of the K2 Code that apparently underlay the STI Search.

For the Court's reference, the previously ordered December 19, 2002 production date was fundamentally hampered by Brookhaven's counsel's refusal to provide Adobe the expert work histories for Brookhaven's experts as required by this Court.  Those work histories finally arrived by January 14, 2003 and only subsequently were able to be reviewed and cleared for conflicts.  (Without such conflict clearance, a protective order did not require Adobe to produce, even on an attorneys' eyes only basis, its highly sensitive, non-commercialized source code.) Moreover, as indicated above, the engineer who performed the STI search (which is the sole basis for Brookhaven's continued demands for the underlying source code) was in the Galapagos Islands.  Only upon communication with that individual was Adobe able to finally locate and begin to reproduce the source code for delivery to Brookhaven's counsel.

Finally, Adobe wishes to clarify an apparent discrepancy between (1) the Court's minute order entered November 19, 2002 following the last Case Management Conference in this action, on November 15, 2002, in which the protocol to govern the exchange and review of source code was addressed, and (2) the Order, which the parties jointly drafted and which was entered by the Court one day after entry of the minute order and set forth the terms of the exchange and review of source code.

Following delays occasioned by the holidays and by Brookhaven's failure to promptly provide Adobe with information necessary to screen any conflicts of interest as to its experts, Adobe finally received Brookhaven's source code on January 23, 2003.  Under the terms of the November 20, 2002 order, each party has sixty (60) days *from receipt of its opponent's source code* within which that party's experts may review the source code and provide a report of that review to its opponent and to the Court.  Order ¶ 11.  In contrast, the November 19, 2002 minute order following the last Case Management Conference in this matter provided that the experts' reports were to be exchanged and submitted to the Court within 60 days of the date of the minute order, which would have set January 17, 2003 as the last day to exchange expert reports and submit a summary to the Court.

As a result, it appears that the last day for Adobe to serve and file its expert report should be March 24, 2003 (i.e., sixty (60) days following receipt of Brookhaven's source code) and not January 17, 2003.

Given that the source code review now in progress will not be complete until after February 14, 2003, the date presently scheduled for the next Case Management Conference, Adobe respectfully suggests that the Court continue the February 14 Case Management Conference and re-set it for a date following the exchange of expert reports.  Adobe proposes the following schedule:

**March 24, 2003:**          Last day for Adobe to serve and file its experts' report in accordance with with ¶ 11 of Order Setting Forth Protocol for Production and Examination of the Parties' Respective Source Code, filed November 20, 2002.

**April 1, 2003:**          Last day for both parties to file Joint Case Management Conference Statement.

**April 11, 2003:**          Case Management Conference (10:30 a.m.).

**E.**     **Joint Proposed Discovery Schedule**

Deadline for exchange of initial disclosures:          **April 30, 2003**

19

| | |
|---|---|
| Fact discovery cut-off: | **October 31, 2003** |
| Expert witness disclosures & FRCP | |
|     26(a)(2)(B) reports due: | **November 28, 2003** |
| Expert rebuttal reports due: | **December 19, 2003** |
| Last day to file dispositive motions: | **January 16, 2004** |
| Last day to hear dispositive motions: | **February 20, 2004** |
| Last day to file joint pre-trial statement: | **March 5, 2004** |
| Last day to file motions in limine and/or | |
|     objections to evidence: | **March 5, 2004** |
| Last day to file responses/oppositions to | |
|     motions in limine/objections to evidence: | **March 11, 2004** |
| Pre-trial conference: | **March 18, 2004** |
| Trial: | **May 17, 2004** |

1.    **Brookhaven's Position Regarding Discovery Limits**

This matter has been pending since August 2001.  The complaint was served on Defendant in December 2001 and the Court denied Defendant's Motion to Dismiss in April 2002. Brookhaven respectfully submits that it is time for full discovery to commence.  Based on Defendant's actions to date, it is clear that unless a discovery schedule is put into place, this matter will drag on for years.

Brookhaven further respectfully submits that it does not believe that it can abide by either the ten deposition limit set forth in the Federal Rule of Civil Procedure 30(a)(2)(A) or the interrogatory limit set forth in Federal Rule of Civil Procedure 33(a).  Thus Brookhaven respectfully submits the following:

(a)    Interrogatories:  maximum of 50 per side

(b)    Document Request:  no maximum

(c)    Requests for Admission:  no maximum

(d)    Depositions:  maximum of 25 per side

**2.    Adobe's Position Regarding Discovery Limits.**

1
2
3
4
5
6

Brookhaven's contention that Adobe has held up discovery in this action is nonsense. The Court has repeatedly made it clear that the initial source code review and comparison now in progress is to precede any discovery in this case. The lengthy holdup in arriving at a protective order and a protocol to govern the source code review has been almost entirely the result of Brookhaven's pattern of frequent and inexplicable delays in (1) responding to Adobe's proposed drafts, (2) providing necessary information regarding experts, and (3) responding to Adobe's many communications seeking to move the matter forward.

7
8
9

Finally, Adobe sees no need to deviate from the number of depositions and discovery requests permitted by the Federal Rules of Civil Procedure and specifically objects to Brookhaven's unsupported request for any more than ten depositions and twenty-five interrogatories per side.

10

**TRIAL SCHEDULE**

11
12
13

Adobe believes that following the review of the relevant portions of source code, Brookhaven's allegations will be proven to be meritless. Consequently, it is Adobe's position that no trial will be necessary.

14
15
16
17
18

In the event that this matter does proceed to trial, the Parties request that the trial be set to begin May 17, 2004. The parties expect the trial testimony to last approximately 7-10 court days, exclusive of voir dire, argument, motions, and other presentations outside the presence of the jury, and depending on the scope of testimony and the number of witnesses permitted by the Court.

19
20

Respectfully submitted,

21
22

Dated: February 4, 2003           CHARLES J. FERRERA

23
24
25

By: _____/s/_____

26

Charles J. Ferrera

27

Attorney for Plaintiff

28

21

1    BROOKHAVEN TYPESETTING SERVICES, INC.

2

3
4    Dated:  February 4, 2003            KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP

5

6
     By:  _____/s/_____
7
     Kenneth E. Keller
8
     Attorneys for Defendant
9
     ADOBE SYSTEMS INCORPORATED
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CASE MANAGEMENT ORDER**

2

3          The Joint Case Management Statement and Proposed Order is hereby adopted by the

4   Court as the Case Management Order for the case and the Parties are ordered to comply with this

5   Order.  In addition, the Court orders as follows:

6

7

8

9

10

11  Dated: _____, 2003

12

13          _____

14          THE HONORABLE RONALD M. WHYTE
            UNITED STATES DISTRICT COURT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

24