Kenneth E. Keller (SBN 71450)
Christopher T. Holland (SBN 164053)
Ingrid Leverett (SBN 148813)
KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP
114 Sansome Street, 7th Floor
San Francisco, CA  94104
Telephone:  (415) 249-8330
Facsimile:  (415) 249-8333

Attorneys for Defendant
ADOBE SYSTEMS INCORPORATED

Charles J. Ferrera (SBN 99656)
Attorney at Law
Dillingham Transportation Building
735 Bishop Street, Suite 401
Honolulu, Hawaii 96813
Telephone No.:  (808) 599-5220

Attorney for Plaintiff
BROOKHAVEN TYPESETTING
SERVICES, INC.

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BROOKHAVEN TYPESETTING SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ADOBE SYSTEMS INCORPORATED, <br><br> Defendant. | Case No.: C-01-20813-RMW (E-File) <br><br> **JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND [PROPOSED] ORDER** <br><br> Date:        June 6, 2003 <br> Time:       10:30 a.m. <br> Judge:     Hon. Ronald M. Whyte <br> Courtroom:  6 |

JOINT CASE MANAGEMENT CONFERENCE
 STATEMENT AND [PROPOSED] ORDER
Case No. C-01-20812 RMW (E-File)

Plaintiff Brookhaven Typesetting Services, Inc. ("Brookhaven") and Defendant Adobe Systems Incorporated ("Adobe") hereby jointly submit this Joint Case Management Statement and Proposed Order and request that the Court adopt it as its Case Management Order in this case. (Throughout this Statement, Plaintiff and Defendant are referred to collectively as "the Parties.")

**For the Court's reference, the only sections of this Joint Case Management Conference statement that are substantively different from the Joint Case Management Conference Statements filed on April 19, 2002, September 6, 2002, November 6, 2002 and February 4, 2003 are the sections entitled "Anticipated Motions," "DISCLOSURES AND DISCOVERY" and "TRIAL SETTING." Those sections describe the issues currently requiring the Court's attention.**

**Finally, as explained below, Adobe requests that the June 6, 2003 Case Management Conference be transcribed.**

## DESCRIPTION OF THE CASE

1. **Jurisdiction.**

[No change.] Plaintiff contends this Court has federal question jurisdiction over this action pursuant to 17 U.S.C. § 501 *et seq.*, 28 U.S.C. §§ 1331, 1338(a), and 1338(b). As set forth in its Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Adobe believes there is no present claim or controversy ripe for review and thus jurisdiction is technically lacking. The Court denied Adobe's Rule 12(b)(6) motion. Adobe does not intend to contest the Court's personal jurisdiction over it in this action.

2. **Brief Description of the Claims and Defenses in this Action.**

[No change.] The Parties dispute many of the facts and events underlying this action. The Parties' separate descriptions of the case are outlined below.

A. **Brookhaven's Allegations.**

[No change.] In or about 1970, James R. Roesser ("Roesser") and Roger W. Jones ("Jones") began the development of a software program for the typesetting of mathematical and

other technical textbooks, journals and other publications.  This program was later named "K2" (the "Program" or "K2").  From 1972 through 1995, STI, Roesser and Jones continuously updated and developed the Program, adding tabular, page-layout and chemistry capabilities to the Program.  Brookhaven alleges that the source code comprising the Program is an original work of authorship fixed in a tangible medium of expression, and that the source code contains a substantial amount of material created by Roesser's and Jones' skill, labor and judgment.  The source code comprising the Program contains valuable trade secrets.

Brookhaven alleges that the Program is copyrightable, and that on the date of first publication of the information identified in the Complaint, Roesser and Jones were United States Citizens.  Brookhaven further alleges that Roesser, Jones and Brookhaven have complied with the statutory formalities for registration of copyright with respect to the Program.  Brookhaven filed an application for a copyright with the United States Copyright Office, which application was accepted by the United States Copyright Office.  Brookhaven alleges that it is the legal owner of the copyright.

In 1996, Roesser and Jones transferred all rights in and to the Program to Brookhaven for consideration.  Throughout the Program's existence, Roesser, Jones, STI and Brookhaven have made all reasonable attempts to protect the trade secrets of the Program including entering into non-disclosure agreements, limiting access to the source code of the Program and requiring confidentiality agreements. Brookhaven alleges that the Program developed by Roesser and Jones contains unique capabilities in the areas of technical typesetting, page layout, and style that are not obvious or readily ascertainable.  Brookhaven contends that STI derived, and Brookhaven derives both actual and potential independent economic value from the trade secrets not being generally known to, and not readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

In 1994, Roesser provided the source code to the Program to Aldus Corporation ("Aldus"), Adobe's predecessor pursuant to a non-disclosure agreement, as part of a negotiation to sell or license the Program to Aldus.  Subsequent discussions took place but no sale or license

1   occurred because at about this time, Adobe purchased Aldus.  Aldus never returned the source
2   code.

3   In or about 1998, Adobe announced that it was developing a program code-named "K2."
4   According to Adobe, the development of the program was begun in 1994 in Seattle by former
5   Aldus employees.  The capabilities Adobe described for its "K2" are remarkably similar to the
6   capabilities of the Program shown to Aldus by Roesser in 1994.  In March 1999, Adobe
7   previewed its version of "K2", now known as InDesign, at a Seybold conference.  In or about
8   August 1999, Adobe released InDesign 1.0.  Adobe has since released two additional versions of
9   InDesign.

10   Brookhaven alleges that Aldus employees acquired and became intimately familiar with
11   the Program's highly confidential information and trade secrets pursuant to a confidential
12   relationship that required Aldus, and its successor Adobe, to maintain the confidentiality of the
13   Program's trade secrets. Brookhaven further alleges, on information and belief, that Aldus, and
14   its successor Adobe were aware that the Program and its source code contained valuable trade
15   secrets.

16   Brookhaven alleges that Adobe has infringed Brookhaven's copyright and
17   misappropriated Brookhaven's trade secrets by copying the Program and incorporating the
18   Program, or portions thereof, into Adobe's program, InDesign.  Brookhaven further alleges that
19   Adobe is currently using Brookhaven's copyrighted material and trade secrets in its InDesign
20   program and to the detriment of Brookhaven.  Brookhaven contends that it has pled and intends
21   to prove the elements of copyright infringement and misappropriation of trade secret.
22   Brookhaven alleges that public distribution or disclosure is not required to sustain a cause of
23   action for infringement of copyright or misappropriation of trade secrets, and that mere "use" is
24   enough.  Brookhaven further alleges that the lack of a completed marketable product does not
25   defeat Brookhaven's claim for copyright infringement.

26   Brookhaven contends that it is entitled to damages related to Adobe's profits and/or
27   Brookhaven's loss of income, injunctive relief, and/or such other measure of damages as may be

28

1    appropriate, including double damages.

2    **B.**      **Adobe's Allegations.**

3          **[No change.]**  Adobe contends that Brookhaven's suit lacks merit because Brookhaven

4    fails to allege that Adobe is currently selling any product that includes Brookhaven's purported

5    intellectual property.  At most, Brookhaven contends that (1) Adobe purchased a company that

6    once contemplated licensing STI's alleged "Program," and (2) unidentified future versions of

7    Adobe's InDesign program might employ and disclose Brookhaven's alleged trade secrets and/or

8    infringe Brookhaven's alleged copyright.  Adobe has neither used any "improper means" to

9    acquire nor "copied" anything that is allegedly the intellectual property of Brookhaven.  Because

10   Adobe has not misappropriated any alleged trade secret or infringed any purported copyright,

11   Adobe has not engaged in any unlawful or unfair competition.  Furthermore, Adobe is not a

12   party to any contract with Brookhaven.

13          Adobe further contends that the facts alleged by Brookhaven are insufficient to state any

14   cause of action against Adobe, and that Brookhaven is not entitled to any award of monetary

15   damages, injunctive relief, or attorney's fees.  Substantively, Adobe disputes many of the facts

16   recited above by Brookhaven and expects to obtain evidence during discovery that demonstrates

17   the inaccuracy of several of Brookhaven's assertions.  Among other things, Adobe contends that

18   the alleged source code in the "Program" is neither a protectable trade secret nor copyrightable

19   subject matter, that the alleged source code was not disclosed in confidence to Aldus

20   Corporation, and that Adobe did not assume Aldus Corporation's contractual obligations (if

21   any), with respect to that information.

22          **3.**      **Principal Factual and Legal Issues in Dispute.**

23          **[No change.]**

24          A.      Whether the information referred to in the Complaint constitutes a protectable

25                  trade secret.

26          B.      Assuming the information referred to in the Complaint constitutes a protectable

27                  trade secret, whether Brookhaven and those in privity with Brookhaven have

28

adequately preserved the confidentiality of the alleged trade secret.

C.      Whether Brookhaven has any valid property interest in the alleged trade secret.

D.      Whether Aldus Corporation is the real party in interest with respect to the conduct alleged regarding the alleged trade secret.

E.      Whether Adobe had access to the information identified in the Complaint.

F.      Whether Adobe appropriated any of Brookhaven's alleged trade secrets that are contained in the "Program."

G.      Whether public distribution or disclosure of a trade secret is required to state a cause of action for trade secret misappropriation under California law.

H.      Whether the information identified in the Complaint is sufficiently creative or original so as to qualify for copyright protection, and/or is protectable subject matter under the Federal Copyright Act.

I.      If the source code identified in the Complaint is copyrightable, whether Brookhaven owns a valid and/or enforceable copyright in that source code.

J.      Whether the respective works at issue are substantially similar.

K.      Whether the similarities, if any, between Brookhaven's alleged work and that of Adobe's work relate to a protectable idea.

L.      Whether Adobe's products were created independently from Brookhaven's alleged work.

M.      Whether the lack of a completed marketable product defeats Brookhaven's claim for copyright infringement.

N.      Whether public distribution or disclosure of copyrighted materials is required to state a cause of action for copyright infringement.

O.      Whether Adobe infringed on Brookhaven's alleged copyright in the "Program," in any event.

P.      Whether Adobe has made any unlawful use of any of the information referred to by Brookhaven in its Complaint.

Q.    Whether the Uniform Trade Secrets Act (California Civil Code § 3426 *et seq.*)
and/or the Federal Copyright Act (17 U.S.C. § 101 *et seq.*) preempts
Brookhaven's unfair competition cause of action.

R.    Whether Adobe has engaged in any unfair competition.

S.    Whether a contract exists that creates a relationship between Brookhaven and
Adobe.

T.    If there is a contractual relationship between Adobe and Brookhaven, whether
Adobe breached that contract.

U.    Whether Brookhaven's claims are ripe for adjudication.

V.    Whether Brookhaven's Complaint states a claim upon which relief can be
granted.

W.    Whether any statutes of limitation bar Brookhaven's claims.

X.    Whether Brookhaven's claims are barred by one or more of the limitations
contained in 17 U.S.C. § 107 *et seq.*

Y.    Whether the doctrines of laches, unclean hands, waiver, and/or estoppel apply to
the facts of this case.

Z.    Whether Brookhaven has sustained any damages as a result of Adobe's actions.

AA.    Whether the damages Brookhaven alleges are too remote and/or speculative to be
awarded.

BB.    If Brookhaven has sustained damages, whether those damages are mitigated in
whole or in part by the doctrine of innocent infringement and/or innocent intent.

CC.    If Brookhaven has sustained damages, whether those damages should be doubled.

DD.    If Brookhaven has suffered any injury, whether it could be adequately
compensated in an action at law.

EE.    If Brookhaven has suffered any injury, whether Brookhaven is entitled to
injunctive relief pursuant to California Civil Code § 3426.

FF.    Whether Adobe has been unjustly enriched as a result of the conduct alleged in

1    the Complaint.

2    GG.    Whether Adobe's conduct was in good faith so as to preclude all claims for

3           punitive or exemplary damages.

4    HH.    Whether Brookhaven is entitled to attorneys' fees.

5    **4.    Anticipated Motions.**

6    **[The following was prepared by counsel for Adobe.]**

7           Adobe has filed a motion to compel identification of Brookhaven's trade secrets as

8    required by California Code of Civil Procedure § 2019(d).  That motion is set for hearing on

9    June 20, 2003 at 9:00 a.m.  As explained in the motion to compel, the law requires that, before

10   any discovery takes place in this action, Brookhaven must identify with reasonable particularity

11   its alleged trade secrets.  Brookhaven's view that Adobe was required to meet and confer with it

12   before filing this motion is without merit.  Matters subject to the meet and confer requirement

13   are set forth in Rule 26(a),[1] which Rule 37(a)(2)(A) and Local Rule 37-1 incorporate by

14   reference.  Because California is unique in requiring identification of trade secrets before the

15   commencement of discovery, trade secrets are not among the matters listed in Rule 26(a).  In any

16   event, Adobe has offered to withdraw its motion if Brookhaven agrees to identify its trade

17   secrets by a date certain.  To date, Brookhaven has not responded to that offer.

18          Adobe also requests that, in connection with the Court's analysis of the results of the

19   recent source code review, the Court consider summary disposition of Brookhaven's claim of

20   copyright infringement.  As the Court may recall, at the Initial Case Management Conference on

21   May 17, 2002, in order to establish the basis for Brookhaven's copyright infringement claim, the

22   Court ordered the parties to exchange copies of the source code that is the subject of this action

23   for analysis and comparison by their respective experts.  April 17, 2002 Case Management

24   Order.  As the results of that exchange and analysis (submitted to the Court under seal on or

25   about April 14, 2003 [Brookhaven] and May 5, 2003 [Adobe]) have made clear, that claim is

26

27   [1] References to "Rule" are to the Federal Rules of Civil Procedure.

28   JOINT CASE MANAGEMENT CONFERENCE                                              8
     STATEMENT AND [PROPOSED] ORDER
     Case No. C-01-20812 RMW (E-File)

1   wholly without merit.

2        To prevail on a claim of copyright infringement, a plaintiff must prove three elements,

3   specifically, that:  (1) it owned the copyright in the allegedly copied work, (2) defendant had

4   access to the work, and (3) plaintiff's and defendant's works are substantially similar.  *Frybarger*

5   *v. Int'l Business Machines Corp.*, 812 F.2d 525, 529 (9th Cir. 1987).  Where the scope of

6   copyright protection for a particular work is narrow, substantial similarity is insufficient to prove

7   copyright infringement; instead, the accused work and the copyrighted work must be "virtually

8   identical."  *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439, 1447 (9th Cir. 1994).

9   Even assuming that Brookhaven is able to prove elements (1) and (2), above, its claim of

10  copyright infringement fails because there is no dispute that Brookhaven's source code and

11  Adobe's source code are not substantially similar, let alone virtually identical.

12       It is axiomatic that copyright law offers no protection to ideas, processes, systems or

13  methods.

14           In no case does copyright protection for an original work of
             authorship extend to any idea, procedure, process, system, method
15           of operation, concept, principle, or discovery, regardless of the
             form in which it is described, explained, illustrated, or embodied in
16           such work.

17  17 U.S.C. § 102(b).  To the extent the *expression* of an idea may be sheltered by copyright law,

18  that protection is qualified.  Only the original expression of an idea enjoys copyright protection.

19  *Apple Computer, Inc.*, 35 F.3d at 1445 ("[P]rotection extends only to those components of a

20  work that are original to the author.").  "Originality remains the *sine qua non* of copyright[.]"

21  *Rice v. Fox Broad. Co.*, 148 F. Supp. 2d 1029, 1050 (C.D. Cal. 2001) (internal quotations

22  omitted).  Copyright law does not safeguard the obvious, standard, stock, commonplace or

23  necessary expression of any idea.  *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003); *Apple*

24  *Computer, Inc*, 35 F.3d at 1444-45.

25       As applied to computer software, the significance of these principles is that "those

26  elements of a computer program that are necessarily incidental to its function

27  are . . . unprotectable."  *Computer Assoc. Int'l v. Altai, Inc.*, 982 F.2d 693, 705 (2d Cir. 1992).  It

28

1  follows that copyright protection is highly limited "when an idea and a particular expression of

2  that idea are so inseparable that protecting the expression would necessarily confer a monopoly

3  on the idea because only a limited number of ways exist to express the idea."  *Interactive*

4  *Network, Inc. v. NTN Communications, Inc.*, 875 F. Supp. 1398, 1403 (N.D. Cal. 1995).  In

5  addition, copyright law does not protect expression that is standard or commonplace in the

6  computer industry.  *Brown Bag Software*, 960 F.2d at 1473, 1476; *see also Altai*, 982 F.2d at

7  710.  "[B]asic ideas and their obvious expression" do not come within the purview of copyright

8  law.  *Apple Computer, Inc.*, 35 F.3d at 1447.

9          In light of those rules, the scope of copyrightable expression in Brookhaven's source

10  code is thin.  The idea of Brookhaven's software—to permit the typesetting of mathematical,

11  scientific and other technical publications—receives no protection under the copyright laws.  17

12  U.S.C. § 102(b).  Nor, as a matter of law, does copyright law protect any expression necessarily

13  or obviously flowing from, or standard to, the idea of technical typesetting.  *See Apple*

14  *Computer, Inc*, 35 F.3d at 1444-45.  "[S]imilarities derived from the use of common ideas cannot

15  be protected; otherwise, the first to come up with an idea will corner the market."  *Id*. at 1443.  It

16  follows that software (like that at issue here) that is highly functional, or that is comprised of

17  highly standardized, technical information lies "very near the line of uncopyrightability."

18  *Engineering Dynamics v. Structural Software, Inc*., 26 F.3d 1335, 1348 (5th Cir. 1994).  "Put

19  another way, copyright protection extends only to the artistic aspects, and not the mechanical or

20  utilitarian features, of a protected work."  *Broderbund Software, Inc. v. Unison World, Inc*., 648

21  F. Supp. 1127, 1133 (N.D. Cal. 1986); *see also Berkla v. Corel Corp*., 66 F. Supp. 2d 1129,

22  1141-42 (E.D. Cal. 1999) (giving, as a reason for denying copyright protection to plant image

23  databases, that creator's exercise of judgment was based "not on expressive decision but rather

24  on the essentials" necessary to create realistic images of plants).  Thus standard, obvious and

25  commonplace methods in Brookhaven's Program for generating text, punctuation, fonts, graphs,

26  tables, equations, matrices or indices are not actionable as copyright infringement.  *See Satava*,

27  323 F.3d at 810; *Engineering Dynamics*, 26 F.3d at 1348; *Apple Computer, Inc*., 35 F.3d at 1443;

28

1    *Brown Bag Software*, 960 F.2d at 1473, 1476; *Altai*, 982 F.2d at 710.

2         As a practical matter, Brookhaven's copyright infringement claim fails unless Adobe's

3    source code is shown to copy Brookhaven's source code *virtually identically*.  "When the range

4    of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying

5    is virtual identity."  *Apple Computer, Inc.*, 35 F.3d at 1439 (applying the virtual identity

6    standard); *see also Rachel v. Banana Republic,* 831 F.2d 1503, 1507 (9th Cir. 1987)

7    ("'indispensable expression' of ideas may be protected only against virtually identical copying");

8    *Frybarger v. IBM*, 812 F.2d 525, 530 (9th Cir.1987); 4 *Nimmer on Copyright*, § 13.03[B][2][b]

9    at 13-64 (explaining that, if the original aspect of a work lies in its literal expression "then only a

10   very close similarity, verging on the identical, will suffice to constitute an infringing copy").

11   Even if Brookhaven's claim is that Adobe copied Brookhaven's "unique selection and

12   arrangement" of otherwise unprotected elements, "there can be no infringement unless the works

13   are virtually identical."  *Apple Computer, Inc.*, 35 F.3d at 1446.[2]

14        In fact, the Ninth Circuit has repeatedly affirmed summary judgments refusing to grant

15   copyright protection to computer software analogous to, and arguably more "expressive" than,

16   the software at issue here.  Specifically, after recognizing that the applicable scope of copyright

17   protection was narrow, the Ninth Circuit affirmed summary judgments denying copyright

18   protection to a graphical user interface, *Apple Computer, Inc.*, 35 F.3d at 1447, and to a

19   computer program for outlining text, *Brown Bag Software*, 960 F.2d at 1476.

20        Here, it is undisputed that there is no substantial similarity between Brookhaven's

21   Program and Adobe's InDesign, let alone virtual identity.  Both of Brookhaven's experts were

22   conspicuously silent as to whether the two programs share any similarity, and the Court is

23   familiar with the well-supported opinion of Adobe's forensic software analyst, Andy Johnson-

24   Laird,[3] following a careful, well-documented analysis, that absolutely no such similarity exists.

25   _____

26   [2] In any event, "a combination of unprotectable elements is eligible for copyright protection only
     if those elements are numerous enough and their selection and arrangement original enough that
     their combination constitutes an original work of authorship."  *Satava*, 323 F.3d at 811.

27   [3] Mr. Johnson-Laird is eminently qualified to analyze similarity in computer code, as is

28

*See* Johnson-Laird Decl. ¶¶ 12-13, 20-24, 31. Neither of Brookhaven's experts has reported anything inconsistent with any of Mr. Johnson-Laird's findings.  *See, generally*, Declaration of Bruce Henderson and Declaration of Stephen Carr.  To the contrary, as Mr. Johnson-Laird observed, Brookhaven's silence on the issue of similarity—the central issue to its copyright infringement claim—amounts to an acknowledgment that the parties' respective programs share no similarity.  Johnson-Laird Decl. ¶ 27.

Brookhaven's experts' protestations about the purported need for compilable code are meritless.  As Mr. Johnson-Laird has explained, it is unnecessary to compile source code in order to conduct a side-by-side comparison of the code to analyze it for textual or functional similarity.  Johnson-Laird Decl. ¶¶ 26, 28.  Brookhaven's experts can easily ascertain whether or not the source code Adobe provided to Brookhaven is complete by using a third-party tool such as Understand for C++.  *See* Johnson-Laird Decl. ¶ 28.[4]  Brookhaven's complaints concerning compilability are nothing more than a smokescreen designed to disguise its inability to deny the patent dissimilarity between the parties' respective programs.  Presumably Brookhaven hopes that by making an issue of compilability, it can prolong the viability of its copyright infringement claim long enough to come up with a pretext, however illusory, for contending that some cognizable similarity exists.

demonstrated by his curriculum vita (attached to his declaration).  Indeed, the Ninth Circuit relied on Mr. Johnson-Laird's published work in at least two copyright appeals, *Sega Enter. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1525 (9th Cir. 1992) and *Sony Computer Entm't, Inc. v. Conntectix Corp.*, 203 F.3d 596, 599, 604 (9th Cir. 2000).

[4]Not only is compiling Adobe's source code unnecessary to determine its completeness or substantial similarity, if any, to Brookhaven's source code, requiring Adobe to compile its source code would be extremely onerous. Adobe directs the Court's attention to paragraph 14 of the Declaration of Frits Habermann filed on or about May 16, 2003.  Mr. Habermann explains that "it would take a dedicated engineer (i.e., one assigned full time to the task) anywhere from three full days to three weeks (working every day, all day) to recreate the "environment" necessary to process the source code underlying InDesign 1.0 and 1.5, since we no longer maintain the tools and compilers used with that code on our premises.  Those compilers and tools would essentially have to be recreated from scratch, and the time necessary to do so would vary greatly based on what we found once we began those efforts, if we were required to do so."

The Court should not lend itself to this strategy.  Adobe has more than demonstrated the lack of any genuine issue as to whether or not Adobe's InDesign is substantially similar to Brookhaven's Program.  No type or amount of discovery can alter this reality.  Indeed, without being ordered to do so, Adobe voluntarily produced non-commercialized, developmental versions of InDesign for Brookhaven's review and analysis.  (Adobe's experts found no similarity between Brookhaven's Program and that non-commercialized code, Johnson-Laird Decl. ¶¶ 6, 12-13, 20-24, 31, and, evidently, neither did Brookhaven's experts.)  It is impossible to conceive of anything else that could arguably be relevant to the "similarity" analysis.

The Court's order that the parties exchange and compare source code did not contemplate an idle exercise to waste time and resources.  The purpose of the review was to establish whether Brookhaven's claims had merit based on shared similarities between the programs.  Because there is no disputed issue of material fact as to Brookhaven's copyright infringement claim, there here is nothing triable to submit to a jury.  *Brown Bag Software*, 960 F.2d at 1472.  Adobe therefore respectfully requests that the Court sua sponte grant summary judgment as to Brookhaven's copyright infringement claim or, alternatively, to advise of the Court's preference as to how Adobe should bring summary disposition of this claim to the Court's attention.

**[The following was prepared by counsel for Brookhaven.]**

      a.      **<u>Adobe's Motions</u>**

      i.      **<u>Adobe's Motion to Compel</u>**

Adobe has filed a motion to compel identification of Brookhaven's trade secrets pursuant to California Code of Civil Procedure section 2019(d).  However, Adobe's motion is fatally flawed.  Adobe has made no formal request for Brookhaven's identification of its trade secrets.  Moreover, counsel for Adobe made no attempt to conduct the meet and confer required by Federal Rule of Civil Procedure 37(a)(2)(A) ("The motion must include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action").  Civil Local Rules define "meet and confer" as follows:

> "Meet and confer" or "confer" means to communicate directly and discuss in good faith the issue(s) required under the particular Rule or order. Unless these Local Rules otherwise provide or a Judge otherwise orders, such communication may take place by telephone. The mere sending of a written, electronic, or voice-mail communication, however, does not satisfy a requirement to "meet and confer" or to "confer." Rather, this requirement can be satisfied only through direct dialogue and discussion-either in a face to face meeting or in a telephone conversation.

Civil L.R. 1.5(n). By letters dated May 21, May 22 and May 23, 2003 to counsel for Adobe, Brookhaven not only pointed out the fatal procedural flaws in Adobe's motion to compel but also agreed to provide Adobe with the only relief requested in Adobe's motion to compel; Brookhaven would provide Adobe with the identification of Brookhaven's trade secrets on or before July 20, 2003.[5] In light of Adobe's failure to conduct a meet and confer and in light of Brookhaven's willingness to provide the requested relief, Brookhaven asked that Adobe withdraw its motion. By letter dated May 23, 2003, Adobe wrote that it would only withdraw its motion to compel if Brookhaven would produce its identification of trade secrets by May 30, 2003, four business days later. Providing Adobe with the exact relief it sought in its motion and proposed order was insufficient. Thus, Adobe has refused to withdraw its motion and is insisting on wasting this Court's time with unnecessary motion practice. Brookhaven will submit its opposition as required under the local rules.

### ii.    Adobe's Purported Request For "Sua Sponte" Summary Judgment

In addition to Adobe's ill-advised and unnecessary motion to compel, Adobe, in its Case Management Conference Statement, has done the unbelievable; Adobe has asked this Court to "sua sponte grant summary judgment" as to Brookhaven's copyright infringement claim. That this issue is ripe for summary disposition is belied by the fact that, rather than file a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, Adobe chose to include the request in the "Anticipated Motions" section of a Proposed Case Management Statement. Apart from being utterly premature, Adobe's "motion" for summary judgment is procedurally flawed,

---

[5] Adobe had scheduled the motion to compel for oral argument on June 20, 2003. Adobe's proposed order sought identification of Brookhaven's trade secrets 30 days after the entry of its proposed order. Thus, the earliest Brookhaven would be required to provide its identification of its trade secrets would be July 20, 2003.

unwarranted because disputed issues of fact exist and unsupported by the law.  Moreover, it demonstrates a level of desperation that is only understood once the Court realizes that Adobe has intentionally failed to comply with the Court's November 20, 2002 Order governing the exchange and review of source code.

**Adobe's motion is procedurally flawed.**  There is no provision under Civil Local Rule 16, which allows a motion to be made in a Proposed Case Management Conference Statement.  Federal Rule of Civil Procedure 56 and Civil Local Rules 6 and 7 govern motions for summary judgment.  Under the rules, the moving party is required to set the motion a minimum of 35 days forward, allowing the responding party a minimum of 14 days to respond.  Brookhaven received Adobe's draft Proposed Case Management Conference Statement on May 21, 2003, six days before submitting this Statement to the Court and only 16 days before the Case Management Conference.  Thus, like its motion to compel, Adobe's motion for summary judgment is fatally flawed.

**Adobe's motion for summary judgment is unwarranted because disputed issues of fact exist.**  As this Court has held, "[s]ummary judgment is proper when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Interactive Network, Inc. v. NTN Communs., Inc.,* 875 F. Supp. 1398, 1401-02 (N.D.CA. 1995) (quoting Fed.R.Civ.P. 56(c)).  This Court has further held that "[e]ntry of summary judgment is mandated against a party if, *after adequate time for discovery* and upon motion, the party fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . ."  *Id.* at 1402 (emphasis added) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).  In addition, the court "must draw *all justifiable inferences in favor of the nonmoving parties,* including questions of credibility and of the weight to be accorded particular evidence." *Id.* (emphasis added) (citing *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 520, 111 S.Ct. 2419, 2434-35, 115 L.Ed.2d 447 (1991)).

1

2        Under these standards, there is little doubt that Adobe's "motion" must fail. Federal Rule

3   56 and relevant case law anticipate that there will have been discovery in the action before a

4   motion for summary judgment is filed.  Here, the only discovery has been the exchange of

    source code.  And even that has been incomplete.

5        Moreover, in its November 20, 2002 Order, this Court required the parties to exchange

6   source code and that the source code be complete and compilable.  November 20, 2002 Order at

7   ¶ 3.  The source code Adobe produced was not compilable.  *See* April 10, 2003 Declaration of

8   Bruce Henderson; April 10, 2003 Declaration of Stephen Carr; May 26, 2003 Declaration of

9   Bruce Henderson.  Both prior to and at the February 14, 2003 Case Management Conference,

10  counsel for Brookhaven notified counsel for Adobe that the source code Adobe produced was

11  not complete and not compilable.  Although Adobe's counsel now denies ever having made the

12  representations, Adobe's counsel assured both Brookhaven's counsel and this Court that the

13  source code was complete and compilable.  The May 16, 2003 Declaration of Frits Habermann,

14  however, demonstrates that Adobe never intended and never did produce complete and

15  compilable software.  As explained in both Henderson Declarations and the Carr Declaration,

16  compilability is necessary both to determine that the source code produced is complete and is in

17  fact the relevant source code *and* to conduct the substantial similarity analysis.  Thus, until

18  Adobe produces compilable source code, Brookhaven's experts cannot conduct the substantial

19  similarity analysis.

20       Adobe relies on the Declaration of Mr. Johnson-Laird to demonstrate a lack of substantial

21  similarity.  However, Mr. Johnson-Laird's analysis is called into question by the fact that Mr.

22  Johnson-Laird also could not determine that the source code was complete because he also was

23  unable to compile the source code.  *See* May 26, 2003 Henderson Declaration; *see* May 16, 2003

24  Habermann Declaration.  Moreover, Mr. Johnson-Laird conducted only the most basic, line-for-

25  line, character-for-character analysis that does not constitute the entire substantial similarity

26  analysis.  May 26, 2003, Henderson Declaration ¶ 8.  Thus, the only thing that Mr. Johnson-

27  Laird's declaration demonstrates is that he did not find any evidence of line-for-line, character-

28

JOINT CASE MANAGEMENT CONFERENCE                                              16
STATEMENT AND [PROPOSED] ORDER
Case No. C-01-20812 RMW (E-File)

for-character copying using the incomplete, incompilable source code that Adobe provided.  *Id.* ¶¶ 3-9.

Mr. Habermann's statements to the effect that he produced complete source code are unavailing.  Mr. Habermann swore that Adobe is unable to provide the tools necessary to compile the developmental versions and two of the released versions.  Thus, with respect to those versions of the source code, Mr. Habermann is unable to state that they are complete.  May 26, 2003, Henderson Declaration ¶¶ 3-9.

Therefore, because Adobe has not produced complete and compilable source code, in direct violation of the Court's November 20, 2002 Order, a complete substantial similarity analysis was impossible to conduct.  Moreover, it is not even clear that the source code produced is in fact what it purports to be.  May 26, 2003, Henderson Declaration ¶ 10.  Thus, drawing all justifiable inferences in favor of Brookhaven, including questions of credibility, substantial issues of fact with respect to substantial similarity still exist and no summary judgment can be had on the issue of copyright infringement.

**Adobe relies on inapplicable case law and unwarranted conclusions of law in support of their premature motion for summary judgment in order to argue that the applicable standard is "virtually identical" as opposed to "substantially similar."6** Brookhaven respectfully submits that the applicable standard here is "substantial similarity." Additionally, the determination that the appropriate standard is virtually identical would require a detailed and in-depth analysis of Brookhaven's source code, an analysis that Adobe has not conducted and an analysis for which the Court does not yet have the factual information to conduct.  *See Computer Assocs. International v. Altai, Inc.,* 982 F.2d 693, 706-11 (2d Cir. 1992).  Moreover, substantial issues of fact exist under either standard.

Many of the cases cited by Adobe are inapposite as they do not involve literary works, such as source code, but instead involve graphical user interfaces, other audiovisual works, or

---

6 It is rather surprising that one of the largest producers of page layout and graphics software, Adobe, contends that such programs should receive only "thin" copyright protection.

factual works. *See, e.g., Satava v. Lowry,* 323 F.3d 805, 810 (9th Cir, 2003) (finding no copyright protection could be afforded to "glass-in-glass" jellyfish structures, the depiction of which result from jellyfish physiology; others cannot be prevented "from depicting jellyfish with tendril-like tentacles or rounded bells, because many jellyfish possess those body parts"); *Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1445 (9th Cir. 1994) (the court found limited copyright protection where there were limited ways to express the functions of the graphical user interface ("GUI") and where Apple admittedly borrowed heavily from Xerox and IBM); *Rachel v. Banana Republic, Inc.,* 831 F.2d 1503, 1507 (9th Cir. 1987) (holding that virtually identical copying required where "the nature of the creation" of synthetic animal heads "makes similarity necessary"); *Rice v. Fox Broadcasting Co.,* 148 F. Supp.2d 1029, 1054 (C.D. Cal. 2001) (applying "virtually identical" standard where "there may be only so many ways to make a show about revealing the secrets of known magic tricks.")

The common thread in all of the cases cited by Adobe is that there were limited ways in which the idea could be expressed and the alleged copyrighted material was more factual (*e.g.,* how a plant looks, or how a jellyfish looks). Brookhaven respectfully submits that its copyrighted source code does not fall into the same category as a graphic interface or a glass jellyfish and that substantial similarity is the appropriate standard.

There remain substantial issues of fact in this case, which will be greatly aided by a complete analysis and review of complete and compilable versions of Adobe's source code as well as general discovery. Brookhaven and Adobe's experts will find evidence of virtually identical copying and/or substantial similarity once Adobe complies with this Court's orders and produces complete and compilable source code. Moreover, this Court, after being provided with all of the factual information necessary to make its decision will determine which standard to apply in determining the level of protection to be afforded to Brookhaven's source code.

We respectfully submit that Adobe's request for summary judgment be denied. There is no doubt that summary judgment is inappropriate at this time. Should the Court be inclined to entertain this motion, however, Brookhaven respectfully requests the opportunity to fully brief

the issues.

**b.** **Brookhaven's Motions**

The common pattern throughout this litigation, whether it is Adobe's failure to abide by Rule 37 in conducting a meet and confer before filing a motion to compel, Adobe's repeated flouting of this Court's orders, or Adobe counsel's misrepresentations to this Court, is that the rules do not apply to Adobe.  Based on Adobe's repeated pattern of failure to comply with this Court's orders, as discussed more fully in the "Disclosures and Discovery" section, Brookhaven anticipates filing a motion to compel, compelling Adobe to produce compilable versions of the developmental and released versions of its source code in PC format as well as the developmental version of its source code searched by Mr. Foglesong.  Also, in light of the resources Brookhaven has devoted to confirming that Adobe has failed to comply with the Court's order after Adobe's counsel specifically represented to Brookhaven and this Court that the source code was complete and compilable, Brookhaven anticipates filing a motion for sanctions.

**5.** **Service of Process.**

**[No change.]**  Adobe was served with the Complaint on December 20, 2001.

**6.** **Additional Parties.**

**[No change.]**

The Parties do not anticipate the inclusion of additional parties in this action, but Adobe maintains that Aldus Corporation was the real party in interest as to Brookhaven's allegations.

**7.** **Consent to Magistrate.**

**[No change.]**

The Parties do not believe this case is suitable for reference to a Magistrate Judge for trial.

**ALTERNATIVE DISPUTE RESOLUTION**

**[No change.]**  This action was automatically assigned to non-binding Arbitration. However, the Parties have stipulated to private mediation, and the Court so ordered on October

17, 2002.  The Parties anticipate exchanging proposed mediators and selecting a mutually agreeable mediator with appropriate intellectual property experience.

## DISCLOSURES AND DISCOVERY

**[The following was prepared by counsel for Brookhaven.]**

### A.   Adobe Has Failed To Comply With the Court's November 20, 2002 Order

Adobe has failed to comply with this Court's November 20, 2002 Order.  Adobe has failed, and continues to fail, to produce complete and compilable PC versions of its source code. Adobe has also failed, and continues to fail, to produce the developmental version of its source code that was the subject of a search by Adobe in November/December 2000.  Brookhaven has devoted substantial time and resources and incurred substantial expense to determine that Adobe has failed to comply with the Court's Order.  Moreover, discovery has been stayed for the past year, until the review of the source code is complete.  Because of Adobe's continued failure to comply with this Court's orders and its repeated attempts to delay this action, Brookhaven respectfully requests that the Court require Adobe to produce complete and compilable versions of its developmental and released source code and the developmental version searched by Mr. Foglesong. Brookhaven also respectfully requests that discovery in this action move forward without any further delay.

### 1.   Background

The history of this production dispute bears repeating in order to get the full flavor of Adobe's pattern of delay.

### a.   Production of Source Code

On March 27, 2002, Brookhaven's counsel forwarded a draft Stipulation and Proposed Protective Order to Adobe's counsel.  The proposed order was to govern the exchange of all confidential and highly confidential materials produced in this action, including source code.  At the Case Management Conference held on April 26, 2002, the Court ordered the parties to "meet and confer regarding the reviewing the code and a mechanism of reviewing the code" and set a

further case management conference for June 28, 2002.  Minute Order dated April 26, 2002.  In the proposed Case Management Order filed by Adobe on May 1, 2002 and subsequently entered by the Court, Adobe wrote "The parties are further ordered to make arrangements to review and compare each other's respective source codes before the June 28 Case Management Conference."

It was not until August 9, 2002 that Adobe's counsel, for the first time, proposed a protocol for the review and exchange of the source code.  In Adobe's proposed protocol for the exchange of source code, Adobe took outrageous positions that it then abandoned before the September 13, 2002 Case Management Conference including limiting the review to the "relevant portions" of the "released" versions of the source code and limiting the review to *one* day in the offices of Adobe's counsel.  At the same time, Adobe sought a further continuance of the Case Management Conference to November.  Not surprisingly, counsel for Brookhaven, in attempt to get the review of the source code moving, refused to agree to a further adjournment.  At Brookhaven's refusal to agree to their attempts to further delay the exchange of source code, Adobe's counsel attempted to pin the blame for the delay on Brookhaven.

At the Case Management Conference held on September 13, 2002, the Court ordered, *inter alia,* "defendant [to] provide to the plaintiff . . . source codes of their two current products."  Minute Order dated September 13, 2002.  Subsequent to the September 13, 2002 Case Management Conference, the parties engaged in detailed negotiations over the form of order.  Even though the parties could not agree on a form of order, Adobe was not relieved of its responsibility to produce the source code.  Nevertheless, Adobe failed to do so.  Moreover, Adobe again took several unreasonable positions regarding the protocol to govern the production of the source code, positions that they ultimately abandoned before the November case management conference or the Court rejected.  Moreover, in October, Adobe again asked for an adjournment of the Case Management Conference and Brookhaven's counsel again refused to agree.

After the November 15 Case Management Conference, the Court entered the Order Setting Forth Protocol for Production and Examination of the Parties' Respective Source Codes

dated November 20, 2002 ("November 20, 2002 Order"), the Court again required Adobe to

produce its source code but, as proposed by the Parties, included certain specifications about the

manner in which it must be produced:

> Copies of Source Code prepared by Adobe for Review by experts for
> Brookhaven shall be for Windows in version C++.  Each side shall
> produced copies of each Source Code on three compact discs for use in the
> Review. Copies of Source Code must be in a complete and compilable
> state.  "Complete and compilable state" means that each party shall be able
> to compile the Source Code and that the Source Code includes any and all
> necessary libraries, resource files, project files, or other files.

November 20, 2002 Order ¶ 3.

It was not until late January 2003, however, that the exchange took place.  Adobe

contended that this delay was caused by Brookhaven's failure to provide Adobe with

information necessary to screen conflicts of interest as to the experts.  In its Case Management

Statement, Adobe wrote:  "Without such conflict clearance, a protective order did not require

Adobe to produce, even on an attorneys' eyes only basis, its highly sensitive, non-

commercialized source code."  What Adobe had requested, however, was a complete list of the

matters in which Brookhaven's experts had testified.  Nothing in the November 20, 2002 Order

or the Protective Order required Brookhaven to produce this information.  Moreover, with

respect to one of the experts, Adobe was already quite familiar with this expert as he had been a

plaintiff's expert in another matter against Adobe.  Although neither the November 20, 2002

Order or the Protective Order required the information Adobe sought, Brookhaven devoted the

time to putting this information together and produced it to Adobe on January 14, 2003.

Immediately upon receipt of the source code from Adobe, Brookhaven's experts reviewed

the source code and determined that it was not complete, not compilable and was not in PC

format.  April 10, 2003 Henderson Declaration, ¶¶ 12-24; April 10, 2003 Carr Declaration, ¶¶

10-22.  Adobe had failed, in almost every respect, to comply with the November 20, 2002

requirements on production of the source code.  Brookhaven's counsel immediately notified

Adobe's counsel who not only represented that the source code was complete and compilable but

accused Brookhaven's experts of incompetence.

1

At the February 14, 2003 Case Management Conference, counsel for Adobe represented

2

that the source code Adobe had produced was complete, compilable and in PC format.

3

On April 15, 2003, after devoting substantial time and expense to a review of Adobe's

4

source code, BTS' experts swore under penalty of perjury that the source code Adobe produced

5

to Brookhaven was:  (1) not complete; (2) not compilable; and (3) not in PC format.  April 10,

6

2003 Henderson Declaration, ¶¶ 12-24; Carr Declaration, ¶¶ 10-24.

7

On May 5, 2003, Adobe filed the declaration of its expert in which Mr. Johnson-Laird

8

did not contend that the software Adobe produced was complete or compilable, he simply stated

9

compilability is not needed to conduct the basic, side-by-side, character-by-character analysis

10

that Mr. Johnson-Laird had conducted.  On May 16, 2003, Adobe filed the Declaration of Frits

11

Habermann in which Mr. Habermann stated that the three developmental versions and two of the

12

released versions he produced were not compilable.  He also stated that they were complete.

13

However, as Mr. Henderson explained in his May 26, 2003 Declaration, it is impossible to

14

determine if source code is complete if it is not compilable.  ¶¶ 9-11.

15

It is remarkable that after months of negotiating the protocol for the exchange of software

16

and after this Court has entered an order to govern the protocol for exchange of the source code,

17

Adobe fails to comply with the Court's order and states that it does not matter. In recent

18

correspondence, Adobe's counsel wrote:

19

20

21

22

23

24

25

> It is important to note here that compilability was never something that
> Judge Whyte said was necessary.  Rather, the concept originated with
> Brookhaven *immediately following the November 15, 2002 Case
> Management Conference,* at which Judge Whyte ordered the parties, by
> the end of that day, to negotiate a final stipulated order to govern the
> source code review.  Given Brookhaven's *last minute introduction* of the
> concept of compilability, the time constraints imposed by the Court, my
> *client's unavailability on that day,* and the difficulty Adobe had
> experienced up to that point (as now) in getting Brookhaven to stipulate to
> anything, Adobe acquiesced in leaving Brookhaven's language concerning
> compilability in the order for the sake of getting an order entered and the
> source code review underway.

26

27

May 22, 2003 Letter (emphasis added).  Thus, Adobe's position is that they never intended to

28

JOINT CASE MANAGEMENT CONFERENCE
STATEMENT AND [PROPOSED] ORDER
Case No. C-01-20812 RMW (E-File)

23

abide by this Court's Order.  Even if this factual explanation were true, it is incredible that

Adobe never sought relief from the Order or reconsideration.  Adobe simply ignored it.

However, the factual explanation is not true. Brookhaven's proposed order, filed on November 7,

2002, contained the following language:  "The Source Code shall be in a complete and

compilable state.  'Complete and compilable' state means that the party shall be able to compile

the Source Code and that the Source Code includes any and all necessary libraries, resource files,

project files or other files."  Similarly, Brookhaven's Proposed Case Management Conference

Statement, filed on November 8, 2002, contained the following objection to Adobe's proposed

form of order:  "Moreover, Adobe's Proposed Order does not require the source code to be in a

complete and compilable state."

After stating that the source code was compilable, then stating that it was not but that

compilability is unnecessary and then explaining that Adobe never intended to comply with the

Court's Order, Adobe came up with the *piece de resistance* of excuses, the May 16, 2003, Frits

Habermann Declaration. In his muddled, internally inconsistent declaration of dubious

credibility, Mr. Habermann explains that Adobe used third party compilers which it has since

destroyed.  This explanation raises more questions than it answers.  Habermann admits that

Adobe possesses the tools for compiling InDesign 2.0 but it has not produced them.

· Why not?

· How is a third party, off the shelf compiler more proprietary than Adobe's InDesign source code?

· Why is Adobe raising competitive disadvantage now when they have already purportedly produced their own source code?

· Why is Adobe raising competitive disadvantage now when the Court has entered an order governing "Attorneys Eyes Only" production of source code?

· With respect to earlier versions, is Mr. Habermann actually stating that Adobe has no way of compiling its own program?

There are numerous additional questions, but suffice it to say that Mr. Habermann's declaration

alone demonstrates the need for discovery.

Brookhaven respectfully submits that compilability does matter and that whether Adobe

agrees or not, the Court entered the Order and Adobe must comply.  Adobe simply wants to delay this action and for some reason, producing incomplete and incompilable source code must be preferable to producing complete and compilable source code.  There must be some reason Adobe would flout the Court's Order and fail to produce complete and compilable source code.

### b.    Production of The Developmental Version That Was The Subject of The Search

In correspondence dated December 19, 2000 to Dirk M. Schenkkan (the "Feinberg Letter"), Ian Feinberg of Gray Cary, Adobe's former counsel, disclosed that Adobe had run a search on its released and developmental versions of the alleged infringing program, InDesign, for various terms (the "Search") and disclosed the results.  For several months, the parties negotiated the product of the Search results and other documents and materials related to the Search.  On two occasions, this Court ordered Adobe to produce the results of the Search.  Most recently, in the Court's November 20, 2002 Order the Court required Adobe to "conduct a diligent search for any printout or other result of" of the Search and to produce any "evidence of the search that still exists."  The Court also required Adobe to produce "the developmental code itself and any materials and/or documents related thereto as outlined" in the Feinberg Letter or provide "a declaration explaining why it would be oppressive for Adobe to produce such material."

On December 19, 2002, Adobe submitted the Declaration of Frits Habermann ("Habermann Decl."), in which Mr. Habermann not only questioned whether Adobe ever conducted the Search but also stated that no search results could be found.  Adobe's position was that if it could not find any evidence of the Search, it could not determine which developmental version it searched.

Brookhaven and Adobe met and conferred with respect to this issue and Brookhaven expressed its intent to Adobe to file a motion to compel.  Finally, just before the February 14, 2003 Case Management Conference, Adobe identified the Adobe employee, David Foglesong, who had conducted the search and explained that this employee had been in the Galapagos Islands "for quite some time."  In fact, Mr. Foglesong had coincidentally left the employ of

Adobe in December 2002.  *See* Foglesong Declaration.  In any event, Adobe stated in its Case Management Conference that Brookhaven's arguments about Adobe's failure to produce the developmental version of the source code that Adobe searched "will be moot by the time this Court holds the February 14, 2003 case management conference, since by that time Brookhaven's counsel will, in fact, have attorneys' eyes only copies of the K2 Code that apparently underlay the STI search."  In his declaration, Mr. Foglesong stated that the version of the source code Mr. Foglesong search "should exist today unchanged from when [he] conducted [his] search."  Foglesong Declaration ¶ 3.

Upon receipt of the developmental versions of the source code, Brookhaven believed the issue of developmental source code to have been put to rest. Subsequent to the February 14, 2003 Case Management Conference, during the negotiation of the form of order, Adobe wanted to include a statement that all disputes raised by Brookhaven with respect to Adobe's compliance with the November 20, 2002 Order had been resolved.  Brookhaven stated to Adobe that it would agree to such a statement if Adobe would include certain representations, one of which was that Adobe had produced the developmental version of the source code Mr. Foglesong searched. Adobe refused to do so.  True to Adobe's pattern of misrepresentation, after having represented to the Court in its Case Management Conference statement that it would produce the source code "that apparently underlay the STI search" and putting forth a declaration which stated that this version should exist "unchanged", Adobe's counsel wrote:

> Adobe has no way of knowing what developmental version(s) Mr. Foglesong searched and so cannot represent to you that the developmental code provided to your experts is the same as that which Mr. Foglesong searched.

Adobe's fear of making such a representation made much more sense once Brookhaven's experts reported that Adobe had not produced the version Mr. Foglesong had searched.  We respectfully ask the Court to require Adobe to produce the developmental Mr. Foglesong searched.

### **Proposed Discovery Schedule**

Brookhaven hereby proposes the following proposed discovery plan:

Identification of Brookhaven's trade secrets pursuant to California Code of Civil

Procedure section 2019(d) **July 20, 2003**

Discovery Cut-Off (Fact Discovery) **January 30, 2004**

Expert Witness Disclosures and FRCP 26(a)(2)(B) Reports Due **February 20, 2004**

Rebuttal FRCP 26(a)(2)(B) Reports Due **March 12, 2004**

Discovery Cut-Off (Experts) **April 16, 2004**

Last Day to File Dispositive Motions **April 30, 2004**

Last Day to Hear Dispositive Motions **May 28, 2004**

This matter has been pending since August 2001. The complaint was served on Defendant in December 2001 and the Court denied Defendant's Motion to Dismiss in April 2002. Brookhaven respectfully submits that it is time for full discovery to commence. Based on Defendant's actions to date, it is clear that unless a discovery schedule is put into place, this matter will drag on for years. Even when the Court has ordered Adobe to produce its source code in a certain format necessary for a complete review and analysis, Adobe has flouted this Court's orders.

**[The following was prepared by counsel for Adobe.]**

Brookhaven's rambling attack on Adobe, above, has no basis in fact and, more importantly, is largely irrelevant. As Adobe has previously explained, it has been Brookhaven, not Adobe, that has consistently delayed complying with the Court's orders and obstructed literally every attempt to stipulate to anything the Court has ordered. Beyond referring the Court to Adobe's position as set forth in the Joint Case Management Conference Statement filed on September 6, 2002 at pages 17-21, Adobe does not wish to waste the Court's time in re-hashing Brookhaven's longstanding strategy of delay and obfuscation in this case. The issue at this juncture is simple: there is no evidence of copying and Brookhaven knows it.

Also unavailing, for reasons already explained, is Brookhaven's effort to make an issue of the condition of the source code Adobe produced. The unremitting lengths to which Brookhaven has gone to try to characterize compilability as a genuine issue of fact underscore

Brookhaven's fatal inability to refute the lack of any similarity between Brookhaven's and Adobe's programs.  The simple truth is that compilability is unnecessary to analyze and compare the parties' programs for substantial similarity, as Mr. Johnson-Laird has done.  Moreover, and as Adobe has accurately represented to Brookhaven and the Court, Adobe's source code is indeed complete.  Brookhaven's experts could easily ascertain this fact using a readily-obtained source code analyzer tool such as Understand for C++.  Johnson-Laird Decl. at ¶ 28.  Moreover, a tool like Understand for C++ can analyze source code targeted to both Macintosh and Windows platforms.  *Id*. at ¶ 29; May 16, 2003 Habermann Decl. at ¶ 18.

Also pointless is Brookhaven's effort to cast Adobe's diligent search for the source code underlying "the STI Search" (referenced above) as somehow improper.  As Adobe has repeatedly explained to Brookhaven, Adobe conducted an exhaustive search for the source code underlying that search, believed (but has no way to be certain) that it located that source code, and, without any order that it do so, sent Brookhaven that source code.

As explained above, Brookhaven must identify its alleged trade secret or secrets before any discovery may go forward in the present action.  Consequently, Adobe requests that discovery be stayed until after resolution of its motion to compel identification of Brookhaven's alleged trade secrets and what Adobe anticipates will be Brookhaven's compliance with its obligation to make the required identification as ordered by the Court.

Finally, Adobe requests that a court reporter transcribe the June 6, 2003 Case Management Conference.  Adobe has had great difficulty in the past preparing stipulated orders reflecting the Court's rulings because, in Adobe's view, Brookhaven has consistently recalled those rulings inaccurately.  This difficulty will be obviated if a transcript of the Court's rulings is available after any Case Management Conference or other hearing in this action, and hopefully counsel can avoid having to approach the Court, as in the past, for confirmation of its rulings.

## TRIAL SCHEDULE

**[The following was prepared by counsel for Adobe.]**

For the reasons explained above, no discovery, trial-setting, or further proceedings in this

action should take place until after resolution of Adobe's motions (1) to compel identification of Brookhaven's alleged trade secrets, currently on file, and (2) for partial summary judgment on Brookhaven's copyright infringement claim.

**[The following was prepared by counsel for Brookhaven.]**

Joint Pre-Trial Statement Due **June 11, 2004**

Last Day to File Motions *in Limine* and/or

Evidentiary Objections **June 11, 2004**

Last Day to File Responses to Motions *in Limine* and/or Evidentiary Objections **June 25, 2004**

Pre-Trial Conference **July 9, 2004**

Trial **July 19, 2004**

Respectfully submitted,

Dated:  May 28, 2003                CHARLES J. FERRERA

By:  _____/s/_____

Charles J. Ferrera
Attorney for Plaintiff
BROOKHAVEN TYPESETTING SERVICES, INC.

Dated:  May 28, 2003                KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP

By:  _____/s/_____

Christopher T. Holland
Attorneys for Defendant
ADOBE SYSTEMS INCORPORATED

**ADOBE'S [PROPOSED] CASE MANAGEMENT ORDER**

No later than _____, Adobe may file a motion for partial summary judgment on Brookhaven's copyright infringement claim.  For purposes of that motion, Adobe may rely on the declarations of the parties' experts, already on file under seal.

Discovery is stayed until following resolution of Adobe's motion to compel identification of Brookhaven's alleged trade secrets, currently on file, and, if the motion is granted, is further stayed until Brookhaven's compliance with any order directing it to identify its trade secrets.  In any event, discovery is stayed until following resolution of Adobe's motion for partial summary judgment on Brookhaven's copyright infringement claim.

**IT IS SO ORDERED.**

Dated: _____, 2003

_____
THE HONORABLE RONALD M. WHYTE
UNITED STATES DISTRICT COURT JUDGE

## PLAINTIFF BROOKHAVEN TYPESETTING SERVICES, INC.'S PROPOSED CASE MANAGEMENT ORDER

1.      Brookhaven shall identify its trade secrets pursuant to California Code of Civil Procedure, § 2019(d) on or before July 20, 2003.

2.      Discovery shall be allowed to begin on July 20, 2003 or on the date that Brookhaven identifies its trade secrets.

3.      Expert witness disclosures and reports shall be due for Plaintiff on February 20, 2004 and for Defendant on March 12, 2004.

4.      Discovery cut-off shall be on April 16, 2004.

5.      Dispositive motions shall be filed on or before April 30, 2004, with the last day to hear dispositive motions being May 28, 2004.

6.      Adobe shall respond to Plaintiff's First Request for Admissions on or before August 20, 2004.

7.      Adobe shall make binding disclosures concerning the existence of any and all developmental versions of its source code, the existence of versions of InDesign and the extent to which complete and compilable versions are or will be available.