**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**E-FILED on**   8/24/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

BROOKHAVEN TYPESETTING
SERVICES, INC.,

           Plaintiff,

    v.

ADOBE SYSTEMS, INC.,

           Defendant.

No. C-01-20813 RMW

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

**[Re Docket No. 241]**

On September 6, 2006 Adobe Systems, Inc. ("Adobe") filed a motion for summary judgment on the basis that there is no evidence supporting plaintiff Brookhaven Typesetting Services, Inc.'s ("Brookhaven") copyright infringement, trade secret misappropriation and related state law claims. In response, Brookhaven filed a motion for continuance pursuant to Fed. R. Civ. P. 56(f) or, in the alternative, opposition to Adobe's motion. Brookhaven complained, *inter alia*, that Adobe had not produced the necessary compilable source code to enable its expert to examine the entire allegedly infringing program, including in runable form, and argued that additional discovery was needed. The court held a hearing on the matter on November 3, 2006. The court ordered that the hearing on Adobe's motion for summary judgment be continued to August 24, 2007, that Adobe produce within thirty days of the court's order any remaining source code, including in runable form, to allow Brookhaven's expert to

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—C-01-20813 RMW
SPT

**United States District Court**
For the Northern District of California

1   perform a comparison of the allegedly infringing program, that Adobe continue to make its

2   expert available to Brookhaven as previously ordered by this court, and that Brookhaven file its

3   substantive opposition to Adobe's motion by July 20, 2007. *See* Order of April 23, 2007.

4        On July 20, 2007 Brookhaven filed an opposition to Adobe's motion along with an

5   Administrative Request for an Extension of Time seeking an additional ninety days to file its

6   opposition. The court has denied this request. The court read the moving and responding papers

7   and posted a tentative ruling granting defendant's motion. The parties then submitted the motion

8   on the papers. For the reasons set forth below, the court GRANTS Adobe's motion for summary

9   judgment.

10   **I. BACKGROUND**

11        Brookhaven filed this action on August 21, 2001 alleging that Adobe had infringed its

12   copyright of a software program that typesets mathematical and other technical textbooks,

13   journals, and other scientific publications, and includes tabular capabilities, a page-layout

14   capability, and a chemistry capability. Compl. ¶¶ 6, 7, 8, 9, 11. The software program was

15   originally developed by James R. Roesser and Roger W. Jones, who established a company

16   called Science Typographers, Inc. ("STI"). *Id.* ¶¶ 6-7. The program was later renamed "K2."

17   *Id.* ¶ 9. In March 1994 STI commenced licensing discussions with Aldus Corporation. *Id.* ¶ 13.

18   The parties entered into a non-disclosure agreement and STI sent Aldus a copy of the source

19   code and user manual for the K2 program. *Id.* ¶¶ 14-15. Before a license was entered into, STI

20   filed for Chapter 7 bankruptcy. *Id.* ¶ 17. The rights to the K2 program were sold to Roesser and

21   Jones. *Id.* ¶ 10. Around the same time Adobe purchased Aldus. *Id.* In 1996 Brookhaven

22   purchased the rights to the K2 program from Roesser and Jones. *Id.* ¶ 11.

23        In 1998 Adobe announced that it had been developing a program named K2, which began

24   as a project by former Aldus employees in 1994. *Id.* ¶ 19. Brookhaven alleges that the

25   announced capabilities of Adobe's K2 program were similar to the capabilities of the K2

26   program STI had revealed to Aldus pursuant to a non-disclosure agreement during their

27   licensing discussions. *Id.* ¶ 19. Adobe's K2 program is now known as "InDesign." *Id.* ¶ 20.

28   Although the first version of InDesign (InDesign 1.0) did not contain math, technical, and other

"long document" capabilities, an Adobe representative allegedly stated to Roesser that future versions of InDesign will contain such capabilities. *Id.* ¶ 21.  The release of InDesign 1.0 was followed by releases of two additional versions. *Id.* ¶ 22.  In its complaint, Brookhaven alleges on information and belief that future versions of InDesign under development by Adobe would contain the math, technical, and other "long document" capabilities of the Brookhaven K2 program. *Id.*

Brookhaven alleges it filed a copyright application in 2001, a few days before it filed the present action. *Id.* ¶ 9.  In its complaint against Adobe, Brookhaven alleges four claims for relief: (1) misappropriation of trade secrets contained in Brookhaven's K2 program, (2) copyright infringement, (3) unfair competition, and (4) breach of contract.

**B.     Procedural History**

Adobe previously moved to dismiss Brookhaven's complaint for, *inter alia*, failure to state a claim.  In particular, Adobe argued that Brookhaven's complaint fails to allege misappropriation or infringement because it merely pleads on information and belief that a future version of InDesign will contain the math, technical, and long document capabilities in Brookhaven's K2 program.  In the alternative, Adobe sought to strike Brookhaven's allegations of infringement and misappropriation and related state claims based on future versions of Adobe software.  The court denied Adobe's motion, concluding that Brookhaven's complaint satisfied the notice pleading requirements of Fed. R. Civ. P. 8(a).

At the initial case management conference on April 26, 2002, Adobe challenged Brookhaven's bases for claiming copyright infringement and trade secret misappropriation and expressed concern about maintaining the confidentiality of the source code of its challenged applications in light of what it asserted were baseless claims.  Over a series of case management conferences, the court ordered the parties to meet and confer on an approach to exchange and review the source codes at issue and worked out with the parties an approach that recognized the parties' confidentiality concerns, allowed the case to proceed in an orderly fashion and was designed to keep the discovery costs and burdens to both parties under control.

In July 2003 the court ordered Brookhaven to disclose and identify the particular trade

United States District Court
For the Northern District of California

secrets that it alleges have been misappropriated. By order dated November 13, 2003 the court noted that Brookhaven's disclosures were not sufficient under Cal. Code Civ. P. § 2019(d) and further ordered that Brookhaven file supplemental disclosure and identification of the particular trade secrets it alleges have been misappropriated. *See* Order of November 13, 2003 (Docket No. 103).

In addition, on November 20, 2002 the court ordered that the parties' outside experts review Adobe's accused source code under an appropriate protective order, compare that code to Brookhaven's copyrighted code, and report to the court whether there was any evidence of copyright infringement or trade secret misappropriation. The parties were also ordered to advise the court what discovery would then be necessary to make a further or final determination of copyright infringement or trade secret misappropriation. *See* Order Setting Forth Protocol for Production and Examination of Parties' Respective Source Codes dated Nov. 20, 2002 ("Nov. 20, 2002 Order"). The purpose of this initial exchange of source code was to enable the parties to identify whether there is any evidence of copyright infringement or trade secret misappropriation and, if so, how the evidence tended to show those wrongs. *See id.* Based on the findings from an initial comparison or analysis, the parties were to inform the court what other discovery would be necessary to make a further or final determination of copyright infringement or trade secret misappropriation. *See id.*

On October 28, 2005 the court ordered that Adobe produce to Brookhaven "the source code of any dynamic link libraries (DLLs) which are the property of Adobe and were designed for utilization in InDesign 1.0, 1.5.0, 1.5.2 and 2.0 or are known by Adobe to have been developed by someone else (e.g. Aldus) as part of InDesign 1.0, 1.5.0, 1.5.2 and 2.0." *See* Order on Brookhaven's Motion for Leave to File for Reconsideration and its Motion to Commence and Expedite Discovery dated Oct. 28, 2005 at 3 ("Oct. 28, 2005 Order"). In addition, within 60 days after Adobe certified it had produced the ordered materials, the parties were to submit a report stating (1) any evidence of copyright infringement or trade secret misappropriation and (2) what discovery would be necessary to make a further or final determination of copyright infringement or trade secret misappropriation:

United States District Court
For the Northern District of California

1

2

3

4

> After Adobe provides the material in its possession or under its control required by this order, it shall certify in writing that it has done so. Then, within 60 days, each party shall provide a report stating whether there is any evidence of copyright infringement or trade secret misappropriation and, if so, how the evidence tends to show those wrongs. The parties shall also advise the court what discovery is necessary to make a further or final determination of copyright infringement or trade secret misappropriation.

5   *Id.* at 4.

6          On January 12, 2006 Adobe filed a written declaration that (1) "All source code and

7   'make files' in Adobe's possession for InDesign 1.0, 1.5.0, 1.5.2 and 2.0 have been produced";

8   (2) "No source code, 'make files,' or DLLs developed for InDesign 1.0, 1.5.0, 1.5.2 and 2.0 have

9   been discarded by Adobe since the commencement of Brookhaven's suit"; and (3) "Adobe has

10  provided to Brookhaven's counsel the material in Adobe's possession or under its control

11  required by the Court's October 28, 2005 Order." Stephen Studley Decl. Pursuant to Court's

12  Oct. 28, 2005 Order, ¶¶ 3-5. Thereafter, Adobe filed the report of its expert and the present

13  motion for summary judgment in its favor. Adobe relies on its expert's findings and conclusion

14  that there is no evidence of copyright infringement or trade secret appropriation based on

15  comparisons of the source codes at several levels of granularity.

16          Brookhaven filed a status report asserting, *inter alia*, that (1) Adobe had not produced

17  any source code for any of the DLLs at issue (and, in particular, the DLL source codes referred

18  to by Brookhaven in the Parties' Joint Report on Meet and Confer filed May 6, 2005, Ex. F), (2)

19  Brookhaven had not been able to locate any "make files" in the materials produced by Adobe

20  pursuant to the October 28, 2005 Order, (3) Brookhaven's expert's analysis was ongoing, but not

21  completed, and (4) additional substantial discovery was necessary to complete a "copyright

22  infringement and trade secret misappropriation analysis." Brookhaven's Status Report Prepared

23  Pursuant to Oct. 28, 2005 Order. In its report, Brookhaven indicated that Adobe and Adobe's

24  expert refused to assist in locating or identifying the "make files" in the produced materials. *Id.*

25  at 7. Adobe purportedly asserted that some or all of the DLL source code being produced might

26  be embedded in the previously produced source code, and other requested DLLs did not need to

27  be produced because they were not specifically designed for utilization in InDesign 1.0, 1.5.0,

28

1.5.2, or 2.0.[1]  *Id.* at 5.  Therefore, Brookhaven contended, its expert had not been able to complete his analysis.  *Id.* at 7-8.  Brookhaven further argued that substantial additional time was needed to complete its analysis given the "size and complex nature of the InDesign program."  *Id.* at 8.  Finally, Brookhaven sought additional discovery to aid its analysis and reduce the time needed to analyze and compare the programs.  *Id.*

On April 23, 2007 the court ordered Adobe to produce additional source code for DLLs, identify the "make files," and offer expert assistance to Brookhaven:

1.      Adobe is to provide within 30 days of this order the source code for each DLL used in versions 1.0,1.50, 1.5.2 and 2.0 of InDesign, to the extent under Adobe's possession or control, except for those that were not designed specifically for the InDesign product.  For those excepted DLL's, Adobe is to provide a list of the particular function of each generic DLL and who developed it;

2.      Adobe is to continue to make its expert available to Brookhaven as set forth in the court's order dated October 28, 2005; [and]

3.      Adobe is to identify the code it produced that constitutes the "make files."

Based on Brookhaven's request, the court continued the hearing on Adobe's motion for summary judgment from November 3, 2006 to August 27, 2007.[2]

On May 23, 2007 Adobe filed notice of its Submission in Compliance with the court's April 23, 2007 Order.  *See* Docket No. 257.  Brookhaven did not file any substantive objections or response to Adobe's May 23, 2007 notice or the contents of the notice.

On July 20, 2007, the date its substantive opposition to Adobe's motion for summary judgment was due, Brookhaven moved for an extension of time for which to file an opposition to Adobe's motion.  Brookhaven concurrently filed its opposition to Adobe's motion.  Brookhaven moved for modification of the July 20, 2007 deadline to October 19, 2007 on the basis that a conflict with its expert arose July 19, 2007 and, therefore, it needed time to obtain a new expert.  Adobe opposed Brookhaven's request for an extension of time.  The court denied Brookhaven's

---

[1]      In the October 28, 2005 Order, the court noted that Adobe was not required to produce "DLLs that provide generic functions for use in various application programs."

[2]      The motion for summary judgment was initially noticed for hearing October 20, 2006 and rescheduled to November 3, 2006 by stipulation of the parties.

United States District Court
For the Northern District of California

1  request because Brookhaven had not shown sufficient cause for an additional modification of the

2  previously-set deadlines.

3                                   **II.  ANALYSIS**

4       Summary judgment is granted if there is no genuine issue as to any material fact.  FED. R.

5  CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In a motion for summary

6  judgment, the court draws all reasonable inferences that may be taken from the underlying facts

7  in the light most favorable to the nonmovant.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

8  *Corp.*, 475 U.S. 574, 587 (1986).  In *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies,*

9  *Inc.*, the Ninth Circuit elaborated:

10       In order to carry its burden of production, the moving party must either produce
         evidence negating an essential element of the nonmoving party's claim or defense
11       or show that the nonmoving party does not have enough evidence of an essential
         element to carry its ultimate burden of persuasion at trial.  In order to carry its
12       ultimate burden of persuasion on the motion, the moving party must persuade the
         court that there is no genuine issue of material fact.
13
         If a moving party fails to carry its initial burden of production, the nonmoving
14       party has no obligation to produce anything, even if the nonmoving party would
         have the ultimate burden of persuasion at trial.  In such a case, the nonmoving
15       party may defeat the motion for summary judgment without producing anything.
         If, however, a moving party carries its burden of production, the nonmoving party
16       must produce evidence to support its claim or defense.  If the nonmoving party
         fails to produce enough evidence to create a genuine issue of material fact, the
17       moving party wins the motion for summary judgment.

18  210 F.3d 1099, 1102-03 (9th Cir. 2000) (citations omitted).

19       Adobe argues that Brookhaven has failed to produce *any* evidence to show that there is a

20  genuine issue of material facts as to any of its claims despite having access to Adobe's

21  proprietary source code produced pursuant to this court's orders.

22       **A.    Copyright Infringement**

23       Adobe moves for summary judgment on Brookhaven's copyright infringement claim.

24  Although Brookhaven has the ultimate burden of persuasion on its infringement claim, Adobe

25  must either produce evidence negating an essential element of Brookhaven's infringement claim

26  or show that Brookhaven does not have enough evidence of an essential element to carry its

27  ultimate burden of persuasion at trial.  *See Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102-03.

28  In order to prove its claim of copyright infringement, Brookhaven must show: (1) that it owns

the copyright in the alleged copied work (i.e., the Brookhaven K2 program), (2) that Adobe had access to the work, and (3) that Brookhaven's K2 program and Adobe's works (i.e., the InDesign programs) are substantially similar. *Frybarger v. Int'l Business Machines Corp.*, 812 F.2d 525, 529 (9th Cir. 1987); *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 517 (9th Cir. 1993). The court considers whether asserted copying is sufficient to constitute infringement using a two-part test having "extrinsic" and "intrinsic" components. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994); *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977).  [T]he extrinsic test . . . objectively considers whether there are substantial similarities in both ideas and expression." *Apple Computer*, 35 F.3d at 1442.  "[A]nalytic dissection and expert testimony could be used" to assist the inquiry under the extrinsic test. *Id.*  The intrinsic prong "test[s] for similarity of expression from the standpoint of the ordinary reasonable observer, with no expert assistance."  However, "[b]ecause only those elements of a work that are protectable and used without the author's permission can be compared when it comes to the ultimate question of illicit copying, [the court] use[s] analytic dissection to determine the scope of copyright protection before works are considered "as a whole." *Id.* at 1443.

Here, Adobe does not specifically contest that Brookhaven owns the copyright at issue or that it had access to Brookhaven's copyrighted work.  Adobe argues that (1) Brookhaven has failed to provide evidence, whether through a textual analysis of the source codes relevant to this action or otherwise, that shows that Adobe's InDesign program infringes Brookhaven's copyrighted K2 program or that Adobe misappropriated any trade secrets contained in Brookhaven's K2 program and (2) evidence produced by Adobe via its expert's report and declarations shows that there is no infringement or misappropriation.  Thus, the issue before this court is whether there is a genuine issue of material fact that the works at issue are substantially similar or, if applicable, virtually identical.

Before the court addresses the substantive issue raised by this motion, the court addresses Brookhaven's "strong objection" to having to oppose summary judgment at this stage of the case.  As set forth above, the court, after conference with the parties, ordered that this case

proceed on a limited discovery plan in recognition of the confidential and proprietary nature of the parties' respective works and concerns of costs and efficiency. The parties were to meet and confer and agree upon a proper course of discovery, including the production and review of their respective source codes. The purpose of this initial exchange was to enable the parties to identify whether there was any evidence of copyright infringement or trade secret misappropriation. Throughout the course of this limited discovery, Brookhaven has indicated that its experts required more time to complete the necessary comparisons, that Adobe's produced codes were insufficient to allow Brookhaven to create a runable version of the program, and that Adobe's production was incomplete. The court ordered Adobe to confirm that it has produced all source codes required by this court's orders and it has so confirmed. Adobe has also confirmed that it has made its expert available to assist Brookhaven as ordered by this court.

Most recently, after holding a hearing on Brookhaven's motion for continuance of Adobe's summary judgment motion to allow its experts additional time to complete the source code comparison, the court continued the hearing on Adobe's motion for more than nine months. Brookhaven now contends that it needs to complete other discovery in order to support its infringement claim. It is unclear whether Brookhaven's experts completed a textual analysis of the source codes or whether its experts determined there are any substantial similarities in ideas and expression between the two works. *See* 10/6/06 Decl. of Ronald Alepin Supp. Pl.'s Mot. Cont. & Opp'n Def.'s Mot. Summ. J. ¶ 3 ("After considerable effort, I have been unable to reach a professional conclusion on the essential question of whether Brookhaven's intellectual property was used by Adobe in the development of its InDesign software product."). In any event, Brookhaven has not submitted evidence of *any* similarities between its work and Adobe's InDesign program.[3] The fact that this case has proceeded on a limited discovery plan rather than full discovery does not preclude Adobe's motion for summary judgment at this stage of the litigation. Critical to Brookhaven's infringement claim is its ability to identify literal copying or

---

[3]     To the extent Brookhaven contends it needs more time to complete any such analysis, it has not proffered even a partial list of any similarities it has identified based on access to the source codes.

United States District Court
For the Northern District of California

at least any substantial similarities of idea and expression between its K2 program and Adobe's

InDesign program.  *Cf. Apple Computer*, 35 F.3d at 1443 (concluding that it was "well within

the court's case management discretion" to require the plaintiff to produce a list of similarities

between the works rather than merely considering the works as a whole as the court was obliged

"to identify similarities, determine their source, and decide which elements are protectable").

Although Brookhaven seeks to proceed with "full discovery" it is unclear what discovery it

expects would enable it to complete an analysis of the substantial similarities of the computer

programs at issue other than access to the Adobe source codes, which it already has pursuant to

the ordered discovery plan.[4]  Even if the limited discovery permitted would not provide

Brookhaven with sufficient evidence to fully establish its claims, Brookhaven has not come

forward with *any* evidence supporting its claims.

In opposition to Adobe's motion for summary judgment on its infringement claim,

Brookhaven submits that whether its work is entitled to "broad" or "thin" protection or whether

the virtually identical test or the substantially similar test applies are questions of fact that

preclude summary judgment.  The court disagrees.  As the Ninth Circuit held in *Apple*

*Computer*, whether a copyrighted work is entitled to broad or thin protection and the scope of

the plaintiff's copyright are questions of law for the court:

> [R]esolving this appeal is a matter of applying well-settled principles.  In this, as
> in other cases, the steps we find helpful to follow are these:
>
> (1) The plaintiff must identify the source(s) of the alleged similarity between his
> work and the defendant's work.
>
> (2) Using analytic dissection, and, if necessary, expert testimony, *the court* must
> determine whether any of the allegedly similar features are protected by
> copyright.  . . .  [U]nprotectable ideas must be separated from potentially
> protectable expression; to that expression, the court must then apply the relevant
> limiting doctrines in the context of the particular medium involved, through the
> eyes of the ordinary consumer of that product.
>
> (3) Having dissected the alleged similarities and considered the range of possible
> expression, *the court* must define the scope of the plaintiff's copyright—that is,
> decide whether the work is entitled to "broad" or "thin" protection.  Depending
> on the degree of protection, the court must set the appropriate standard for a

---

[4]   Although unclear, Brookhaven does not appear to be seeking additional time to compare the
source codes.

United States District Court
For the Northern District of California

subjective comparison of the works to determine whether, as a whole, they are sufficiently similar to support a finding of illicit copying.

35 F.3d at 1443 (emphases added).  "When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity."  *Id.* at 1439.  Here, Adobe points out in its motion that Brookhaven has failed to identify any similarities between its K2 program and InDesign.  In other words, Brookhaven does not have enough evidence of an essential claim to carry its burden of persuasion.  This is sufficient to meet Adobe's initial burden of production for summary judgment.  "Because plaintiff bears the burden of proving that the works at issue are substantially similar in a copyright infringement case, summary judgment for defendant is appropriate when plaintiff fails to make a sufficient showing that the ideas and expressive elements of the works are substantially similar after defendant has properly identified in a motion for summary judgment that plaintiff has failed to do so."  *Frybarger*, 812 F.2d at 528 (internal citation omitted).  Thus, here, because Brookhaven has not come forward with any showing that the ideas and expressive elements of the works are substantially similar, Adobe prevails on its motion for summary judgment.

As an alternative basis for summary judgment, Adobe offers expert testimony that negates the essential elements of Brookhaven's infringement claim.  Such evidence may support summary judgment if it shows that there is no genuine issue of material fact as to the issue of sufficient similarity between the works at issue.  Although Brookhaven contends that Adobe's expert improperly presumed that Brookhaven's source code is entitled only to thin copyright protection while the proper test is whether there is substantial similarity, this does not necessarily preclude summary judgment.  As noted above, whether the standard is substantially similar or virtually identical is a question of law for the court after the court has applied analytic dissection to determine the protectable elements of the work at issue.  However, here, because Brookhaven has failed to come forth with any evidence of substantial similarity between the two programs, the court does not reach the question of whether, after filtering out nonprotectable ideas and expression, Brookhaven's work is entitled to broad or thin copyright protection.  "Summary judgment is clearly appropriate in copyright infringement cases if, after viewing the evidence and drawing every inference in the light most favorable to the nonmoving party, the

United States District Court<br>For the Northern District of California

1 court concludes that no reasonable jury could find substantial similarity of both ideas and

2 expression between the works at issue."  *See id.* at 528 (citations omitted).

3       Adobe has provided the report of its expert, Andy Johnson-Laird ("Johnson") as evidence

4 to negate a showing of substantial similarity.  Johnson opines that he completed a textual

5 comparison of the Brookhaven source code to the relevant InDesign source code at varying

6 degrees of granularity.  *See* Decl. Kenneth E. Keller Supp. Adobe's Mot. Summ. J. ("Keller

7 Decl."), Ex. C (Johnson Decl.), Ex. L (Johnson Expert Report).  Specifically, Johnson states he

8 performed (1) a literal match analysis to look for identical lines of text in the source codes, (2) a

9 substring match of sequences of characters within lines of text to find matches on lines that are

10 not entirely identical, and (3) a "token"[5] analysis of individual parts of text which have semantic

11 value for computer programming purposes.  *Id.*, Ex. C ¶¶ 16-18.  Based on this analysis, Johnson

12 concludes that the source codes at issue are dissimilar and that there are no forensically-

13 significant matches at the three levels of granularity reviewed.  *Id.* ¶¶ 12-13, 21-24.  In addition,

14 Johnson opines that the lack of textual similarity suggests that the Brookhaven K2 program and

15 the Adobe InDesign program do not share a common ancestry.  Keller Decl., Ex. L, ¶¶ 33-34.

16       In opposition, Brookhaven does not offer evidence, either in the form of expert testimony

17 or otherwise, refuting Johnson's findings.  Rather, Brookhaven argues that its experts need to be

18 able to compile[6] (or build) the InDesign source code and observe it while it runs in order to

19 complete a meaningful comparison.  According to Brookhaven's experts, compilation is also

20 needed to confirm the completeness of the InDesign source codes produced by Adobe.[7]

21 _____

22 [5]      As used by Johnson, the term "token" refers to "a distinct piece of text with semantic value"
23 in the context of computer source code.  *See* Keller Decl., Ex. C at n.5.

24 [6]      In the context of computer programming, compilation is a method for processing human
readable source code into computer readable binary code.

25 [7]      The court notes that the declarations of Brookhaven's experts submitting that compilation of
26 the source code is needed and that they have been unable to compile the InDesign program because
certain libraries were missing were filed in 2003.  As noted above, the court has since ordered
27 additional production by Adobe and Adobe has represented that it has complied with the court's
orders.  Brookhaven has not filed any declarations, affidavits, reports or other evidence in support of
its July 20, 2007 opposition to Adobe's motion for summary judgment, although it referred the court
28 to a declaration filed by another expert, Ronald Alepin, in September 2006.  This declaration largely
indicates that Alepin had not completed his analysis of the source code and predates this court's

**United States District Court**
For the Northern District of California

1  Brookhaven further contends that a textual comparison is fundamentally flawed in determining

2  whether there has been any copyright infringement, although it provides no reasoning or

3  supporting case law for this proposition.  The court finds that a textual comparison can support

4  an inference that there has been no copyright infringement particularly when there is no

5  evidence offered to the contrary.  As Johnson opines, a textual comparison may be proper where,

6  as here, Brookhaven's copyright registers only its source code, not particular methods or

7  processes of compiling code.  *Id.* ¶ 7(b), n.2.  Brookhaven's own expert has stated that a textual

8  analysis is the first step to a source code analysis.  Keller Decl., Ex. F (5/26/03 Decl. of Bruce

9  Henderson), ¶ 8.  Although Henderson submits that compilation of the source code must also be

10  done in order to assess completeness of the produced source code and to observe the program's

11  execution of tasks and functionality while the software is built, he does not suggest that a textual

12  analysis is fundamentally flawed.

13      Johnson further opines that it is not necessary to compile the InDesign source code to

14  determine if there is substantial similarity in the program logic or functionality as there are

15  generally available source code analyzer tools that facilitate analysis of program logic using

16  uncompiled source code.  *Id.* ¶¶ 26-28.  According to Johnson, this is sufficient to analyze the

17  functionality of particular source code text for comparative purposes.  *Id.*  Because Brookhaven

18  has not filed additional declarations or other evidence regarding the source code analysis

19  performed by its experts, including whether they were able to compile the InDesign program

20  following the additional production and requirements set forth in the court's April 23, 2007

21  Order, it is unclear whether Brookhaven has been able to compile any part of the InDesign

22  source code.  It is also unclear whether Brookhaven attempted to compare program logic using

23  any other methods, including the source code analyzer tools suggested by Johnson.

24  Nevertheless, the court concludes that because Brookhaven has not come forth with some

25  showing of substantial similarities either based on a textual or other analysis of the source codes

26  that have been made available to it, the court concludes that Brookhaven does not have evidence

27

28  April 23, 2007 Order requiring Adobe to provide Brookhaven with certain additional files and explanations.

of any similarities between its K2 program and Adobe's InDesign program.[8]  Even if

Brookhaven were correct that a textual analysis is insufficient to identify how the program

executes tasks and functions, it appears that although Brookhaven could have and may have

done textual comparison or some limited comparison of program logic, it has not identified any

similarities to refute the evidence offered by Adobe.  Thus, it has not articulated some basis for

its infringement claim warranting further discovery or precluding summary judgment.  *See*

*Jason v. Fonda*, 526 F. Supp. 774, 777 (C.D. Cal. 1981) (holding that although substantial

similarity in copyright infringement actions is generally a question of fact, summary judgment is

proper when the court determines that the similarity between works is insubstantial as a matter

of law") (citation omitted).

### B.    State Law Claims

Adobe moves for summary judgment on Brookhaven's state law claims of

misappropriation of trade secrets, unfair competition, and breach of contract.  Adobe seeks

summary judgment on the basis that Brookhaven's state law claims are preempted by the federal

Copyright Act or, in the alternative, because Brookhaven cannot raise a triable issue of fact on

essential elements of these claims.

### 1.    Preemption

Adobe argues that Brookhaven's state law claims are preempted because they are all

premised on the contention that Adobe misappropriated elements of Brookhaven's K2 program

for use in its InDesign program.  Section 301 of the Copyright Act sets forth the applicable test

for preemption.  Here, Adobe must establish that Brookhaven's program falls "within the subject

matter of copyright" as defined in §§ 102 and 103 of the Copyright Act.  *Del Madera Properties*

*v. Rhodes and Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir. 1987), *overruled on other grounds by*

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) (citations and internal quotations omitted).  Adobe

---

[8]    One of Brookhaven's experts, Bruce Henderson, stated in his April 2003 declaration that comparison of the functionality and the way functionality is achieved based on an off-the-shelf version of InDesign and publicly available materials regarding InDesign to Brookhaven's program provides a basis for believing that substantial similarities exist between the two programs.  Keller Decl., Ex. D (4/10/03 Henderson Decl.).  However, Brookhaven does not identify any particular function or method of achieving a function that is similar between the two programs.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

must also show that Brookhaven's rights under state law for its claims are "equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106 [of the Copyright Act]." *Id.* (edit in original). In other words, "[t]o survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights." *Id.* at 977.

Here, the parties do not dispute that the subject matter at issue, Brookhaven's software program, falls within the subject matter of the Copyright Act. However, as Brookhaven argues, the basis for its state law claims is that Adobe breached a nondisclosure agreement it had signed with Aldus during licensing negotiations by failing to maintain the confidentiality of Brookhaven's source code received as part of those negotiations. For purposes of determining whether a state law claim has been preempted, Brookhaven's claims include the additional "qualitative" element to preclude preemption. *See Trandes Corp. v. Atkinson Co.*, 996 F.2d 655, 659 (4th Cir. 1993) ("[W]hen a state law violation is predicated upon an act incorporating elements beyond mere reproduction or the like, the rights involved are not equivalent and preemption will not occur.") (citations and internal quotation marks omitted); *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992) (holding that although "unfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted by section 301," "state law rights that can arise in connection with instances of copyright infringement [that] satisfy the extra element test, and thus are not preempted by section 301 . . . include unfair competition claims based upon breaches of confidential relationships, breaches of fiduciary duties and trade secrets."). Although Adobe argues that Brookhaven has not offered any evidence supporting its allegation that Adobe signed a non-disclosure agreement with Aldus, this does not change the fact that Brookhaven's state law claims are based on an element beyond mere copying or reproduction. Accordingly, based on Brookhaven's pleadings, the state law claims are not preempted.

### 2.    Misappropriation of Trade Secret

Adobe also seeks summary judgment on Brookhaven's misappropriation of trade secret claim on the basis that Brookhaven has not produced any evidence to support its ultimate burden

1    of persuasion and that the evidence offered by Adobe negates an essential element of

2    Brookhaven's misappropriation claim.  Under California law, the provisions of the Uniform

3    Trade Secrets Act ("UTSA") apply to misappropriation claims.  Cal. Civ. Code §§

4    3426-3426.10.  In order to establish a misappropriation claim, Brookhaven must show that

5    Adobe "has been unjustly enriched by the improper appropriation, use or disclosure of a 'trade

6    secret.'"  *MAI Sys.*, 991 F.2d at 520.  The UTSA defines a "trade secret" as:

7    information, including a formula, pattern, compilation, program, device, method,
     technique, or process, that:
8    (1) Derives independent economic value, actual or potential, from not being
     generally known to the public or to other persons who can obtain economic value
9    from its disclosure or use; and
     (2) Is the subject of efforts that are reasonable under the circumstances to
10   maintain its secrecy.

11   *Id.* at 520-21 (quoting Cal. Civ. Code § 3426.1(d)).

12        In support of its misappropriation claim, Brookhaven points to the declaration of James

13   R. Roesser, one of the founders of STI and the K2 program.  Roesser states that he had insisted

14   that a non-disclosure agreement be executed between STI and Aldus, and that he reviewed the

15   written agreement.  Decl. James R. Roesser Supp. Pl.'s Opp'n Summ. J. ("Roesser Decl."), ¶ 12.

16   Further, the K2 source code, along with a manual pertaining to K2, were sent to Aldus.  *Id.*

17   Roesser also had a discussion with Aldus programmers about K2, its source code, and how it

18   would fit into Aldus's product line, namely, its Pagemaker program.  *Id.* ¶ 13.  However, as

19   Adobe points out, Brookhaven has not produced any evidence to support that Adobe

20   misappropriated any parts of Brookhaven's K2 program for use in InDesign.  Although it is not

21   disputed that Adobe acquired Aldus, this evidence, even viewed in the light most favorable to

22   Brookhaven, does not support a showing that the information provided by STI to Aldus was later

23   misappropriated and used by Adobe.  As discussed in section A above, there are no indications

24   of similarities between the Brookhaven K2 source code and Adobe's InDesign.

25        In addition, Adobe provides the report of its expert who, after reviewing the relevant

26   parts of the InDesign program for the particular trade secrets identified and disclosed by

27   Brookhaven, opines that the disclosed architecture, structure, methodology of operation,

28   functions, and features that appear to have been identified as trade secrets by Brookhaven either

1   do not appear in InDesign or are not performed in the same manner as described by Brookhaven.

2   *See* Keller Decl., Ex. L (Johnson expert report).  In particular, Johnson addresses each of

3   Brookhaven's disclosed trade secret as not being present in InDesign or not being present in the

4   same manner in InDesign.  Brookhaven does not address the merits of its trade secrets

5   misappropriation claim in its opposition to Adobe's motion for summary judgment, other than

6   pointing out that it has alleged in its complaint that Adobe is a successor-in-interest to Aldus and

7   had a contractual obligation to maintain confidentiality of Brookhaven's trade secrets.

8          Although Brookhaven also points to the October 6, 2006 declaration of its expert, Ronald

9   Alepin, Alepin only states that he needs documents pertaining to the development of InDesign in

10  order to "conduct a complete and final infringement and trade secret misappropriation

11  [analysis]."  Decl. Ronald Alepin Supp. Pl.'s Opp'n Adobe's Mot. Summ. J., ¶ 12.  Alepin

12  submits that based on InDesign user documentation, InDesign "considers the same factors [as

13  Brookhaven's K2] when arriving at the sub- and super-script font size" for its superscript and

14  subscript feature, *id.* ¶ 13, and that Adobe's expert incorrectly stated that InDesign does not

15  support tables when its user documentation devotes pages to table support, *id.* ¶ 17.  However,

16  these statements are vague, provide no detail of any comparison of the two programs' function,

17  features, operations, or methodologies, and are otherwise insufficient to show that Adobe

18  misappropriated elements of K2 for use in InDesign.  Brookhaven offers no other evidence that

19  directly refutes the findings by Adobe's expert that Brookhaven's trade secrets do not appear in

20  InDesign.  Accordingly, the record supports summary judgment in favor of Adobe on

21  Brookhaven's misappropriation of trade secrets claim.

22          **3.      Unfair Competition**

23          Adobe argues that summary judgment should be granted in its favor as to Brookhaven's

24  unfair competition claim for the same reasons supporting summary judgment as to the copyright

25  infringement and trade secret misappropriation claims which serve as the basis for Brookhaven's

26  unfair competition claim.  The court agrees.  Because Brookhaven's unfair competition claim is

27  premised on the alleged copyright infringement and misappropriation of trade secrets, summary

28

United States District Court
For the Northern District of California

1    judgment is warranted in Adobe's favor for the same reasons set forth in sections A and B.2

2    above.[9]

3            **4.    Breach of Contract**

4            Similarly, Adobe argues that summary judgment should be granted in its favor as to

5    Brookhaven's breach of contract claim because Adobe's alleged breach of the non-disclosure

6    agreement is based on the alleged use of confidential Brookhaven information.  As discussed

7    earlier, there is no evidence of misappropriation of Brookhaven trade secrets (or other

8    confidential information) by Adobe or of copyright infringement.  Further, although Brookhaven

9    has alleged that a non-disclosure agreement was signed between STI and Aldus and provided the

10   declaration of Roesser to the same effect, it has not produced a copy of the agreement itself or

11   evidence of the terms and provisions of the agreement to show any particular breach by Adobe.

12   Rather, Brookhaven appears to rely only on the allegations in its complaint.  Accordingly, the

13   court finds that there is no genuine issue of material fact as to Brookhaven's breach of contract

14   claim.

15                              **III.  ORDER**

16          For the foregoing reasons, the court GRANTS Adobe's motion for summary judgment.

17

18   DATED:        8/24/07                    _____
                                              RONALD M. WHYTE
19                                            United States District Judge

20

21

22

23

24

25

26

27

28   _____
     [9]     Brookhaven's sole argument in opposition to Adobe's motion is "Claims for unfair
     competition based on deceptive practices are not preempted by the Copyright Law."  Pl.'s Opp'n at
     9:6-7.

     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—C-01-20813 RMW
     SPT                                         18

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  **Notice of this document has been electronically sent to:**

2  **Counsel for Plaintiff:**

3  Charles J. Ferrera            chuckferrera@lava.net

4  **Counsel for Defendant:**

5  Lori L. Behun                 lbehun@kksrr.com
   Christopher T. Holland        cholland@kksrr.com ldubose@kksrr.com
6  Kenneth E. Keller             kkeller@kksrr.com alau@kksrr.com

7

8

9

10 Counsel are responsible for distributing copies of this document to co-counsel that have not
   registered for e-filing under the court's CM/ECF program.

11 **Dated:**        8/24/07                             SPT
                                              **Chambers of Judge Whyte**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—C-01-20813 RMW
SPT                                    19